73 P.3d 1258

**STATE of Arizona, Appellant,**

v.

**Brian Kelly HAZLETT, Appellee.**

**State of Arizona, Appellant,**

v.

**Sanford Goldstein, Appellee.**

**State of Arizona, Appellant,**

v.

**Jim A. Tiegs, Appellee.**

**State of Arizona, Appellant,**

v.

**Steve Ross Gunter, Appellee.**

Nos. 1 CA–CR 02–0713, 1 CA–CR 02–0743, 1 CA–CR 02–0810, 1 CA–CR 02–0888.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 12, 2003.

---

4. Nancy only asks for "her portion," one half, of the insurance proceeds.

Richard M. Romley, Maricopa County Attorney by Colleen L. French, Deputy County Attorney, Phoenix and Sheila Sullivan Polk, Yavapai County Attorney by Tina R. Ainley, Deputy County Attorney, Prescott, for Appellant.

James J. Haas, Maricopa County Public Defender by Susan L. Corey, Deputy Public Defender, Phoenix, for Appellees.

## OPINION

KESSLER, Judge.

¶ 1 In this opinion we consider the constitutionality of Arizona's statutes dealing with sexual exploitation of children, Arizona Revised Statutes (A.R.S.) sections 13–3551, *et seq.* (Supp.2002), which prohibit, among other conduct, the creation and possession of material commonly referred to as child pornography. The trial court dismissed the indictments in each of the four appealed cases, finding that A.R.S. § 13–3553 is unconstitutionally overbroad because it encompasses expression protected by the First Amendment and Ariz. Const. art. II, § 6. For the reasons that follow, we vacate those decisions.[1]

### I.

¶ 2 Brian Kelly Hazlett, Sanford Goldstein, Jim A. Tiegs, and Steve Ross Gunter (defendants) were separately indicted on multiple counts of sexual exploitation of a minor, each a class 2 felony and dangerous crime against children, in violation of A.R.S. § 13–3553(A)(2). The charges were based on allegations that defendants possessed computer image files of minors under the age of 15

years engaged in exploitive exhibition or other sexual conduct. Prior to trial, defendants moved to dismiss the charges against them in part on the grounds that A.R.S. § 13–3553 infringes upon protected expression in violation of the First Amendment .of the United States Constitution and Ariz. const. art. II, § 6. Following hearings on the motions, the trial court dismissed the charges holding that A.R.S. § 13–3553 is constitutionally overbroad because it fails to require, as an element of the offense, that the depiction be of an actual minor actually involved in sexually exploitive acts.[2]

¶ 3 The State filed timely notices of appeal. We have jurisdiction pursuant to Ariz. const. art. VI, § 9 and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4032(1) (2001).

### II.

¶ 4 The State argues that the trial court erred in ruling that A.R.S. § 13–3553 is constitutionally overbroad.[3] Being an issue of law, we review the constitutionality of a statute *de novo. State v. McMahon,* 201 Ariz. 548, 550, ¶ 5, 38 P.3d 1213, 1215 (App. 2002).

### A.

¶ 5 As a preliminary matter, we reject the State's contention that defendants should be precluded from challenging the constitutionality of A.R.S. § 13–3553 based on lack of standing. The State argues defendants lack standing to make an overbreadth challenge because their alleged conduct falls squarely within the State's legitimate interest in prohibiting child pornography. The State failed to raise the issue of standing in the trial court and never made the particular images that are the subject of the indictments a part of the record. We are therefore unable to determine whether the images alleged to

---

1. Since the issues and decisions in each of these consolidated cases are essentially identical, we will refer to the trial courts and the decisions below in the singular except where necessary.

2. The ruling by Judge Gerst in *Hazlett* was based on his prior ruling in *State v. Stone,* CR 2001–017210 (Superior Court in and for Maricopa County). The decision in *Stone* is pending appeal in this court.

3. "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but ... includes within its scope activities which are protected by the First Amendment." *State v. Baldwin,* 184 Ariz. 267, 269, 908 P.2d 483, 485 (App.1995) (quoting *State v. Jones,* 177 Ariz. 94, 99, 865 P.2d 138, 143 (App.1993)).

have been possessed by defendants are subject to First Amendment protection. Under these circumstances, the issue of standing has been waived. *See In re Pima County Juv. Severance Action No. S-114487*, 179 Ariz. 86, 91 n. 3, 876 P.2d 1121, 1126 n. 3 (1994) (noting standing is not jurisdictional in Arizona and court may consider merits if not raised below).

**B.**

¶ 6 The trial court relied on the recent decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), in concluding that A.R.S. § 13-3553 is constitutionally overbroad. In *Free Speech Coalition*, the United States Supreme Court held that some of the language of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2251 *et seq.*, extending the federal prohibition against child pornography to sexually explicit images that appear to depict minors but produced without using real children, unconstitutionally infringed upon free speech. The Court struck down 18 U.S.C. §§ 2256(8)(B) and 2256(8)(D) which respectively defined child pornography to include a visual depiction of what "appears to be" a minor engaging in sexually explicit conduct and a visual depiction that is "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a depiction of a minor engaging in sexually explicit conduct". The Court held these two definitions were overly broad and, therefore, unconstitutional because they encompassed protected expression. 122 S.Ct. at 1405-06.[4] The Court, however, did not address other provisions of the CPPA prohibiting material involving actual children.[5] The Court previously held that the government can constitutionally ban child pornography depicting actual children whether or not the images are obscene because of State's interest in protecting actual children exploited by the production process. (*New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)).

**C.**

¶ 7 Defendants argued in their motions to dismiss, and the trial court agreed, that A.R.S. § 13-3553 is overbroad under *Free Speech Coalition* because the statute does not require that an "actual child" be the subject of the visual depiction of actual sexual exploitation or actual sexual conduct. Our review of A.R.S. §§ 13-3551 and 13-3553 leads us to conclude that their scope is limited to visual depictions of "actual minors" actually engaged in real or simulated exploitative exhibition or sexual conduct. Therefore, these two statutes do not suffer from the defects found to exist in the provisions of the CPPA invalidated by the Supreme Court.[6]

¶ 8 The primary rule of statutory construction is to give effect to the intent of the legislature. *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). In determining legislative intent, "we consider the statute's context, the language used, the subject matter, the historical background, the statute's effects and consequences, and the statute's spirit and purpose." *Id.* While generally a statute is presumed to be constitutional, when a statute impinges on core constitutional rights, the burden is shifted to the proponent of the statute to show that it is constitutional. *Ruiz v. Hull*, 191 Ariz. 441, 448, ¶ 25, 957 P.2d 984, 991 (1998); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816, 120 S.Ct. 1878, 1888, 146

---

4. The above definitions applied to a number of statutes criminalizing child pornography. *E.g.*, 18 U.S.C. § 2252A(a)(4)("Any person who ... knowingly sells or possesses ... any child pornography .... shall be punished as provided [in this statute]").

5. *E.g.*, 18 U.S.C. § 2252(a)(4)(B)("any person who ... knowingly possesses ... 1 or more books ... or other matter which contain any visual depiction that has been mailed ... if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit

conduct and (ii) such visual depiction is of such conduct ... shall be punished as provided [in this statute]"). After *Free Speech Coalition*, federal courts have upheld § 2252(a)(4)(B) from First Amendment overbreadth attack. *E.g., United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003).

6. This court previously upheld the possession aspects of § 13-3553 from constitutional attack on privacy grounds. *State v. Emond*, 163 Ariz. 138, 786 P.2d 989 (App.1989).

L.Ed.2d 865 (2000). However, if two alternative constructions of a statute are available, courts should choose the one that results in constitutionality if that is possible. *Ruiz v. Hull.* "Thus, we construe statutes sensibly, attempting to effectuate the intent of the legislature, and we avoid constructions that would render statutes invalid or parts of them meaningless." *State v. Thompson,* 204 Ariz. 471, 475, ¶ 10, 65 P.3d 420, 424 (2003).

¶ 9 The offense of "sexual exploitation of a minor" is set forth in A.R.S. § 13–3553(A) as follows:

A person commits sexual exploitation of a minor by knowingly:

1. Recording, filming, photographing, developing or duplicating any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.

2. Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.

The term "minor" is defined in A.R.S. § 13–3551(5) (Supp.2002) as "a person or persons who were under the age of eighteen years of age at the time a visual depiction was created, adapted or modified." The term "person" is further defined in A.R.S. § 13–105(26) (2001), in pertinent part, as "a human being."

¶ 10 In dismissing the indictment in *State v. Hazlett,* CR 2002–005175, basing its decision on *State v. Stone,*[7] the trial court ruled that the absence of limiting language in A.R.S. § 13–3553 such as "involving the use of" or "identifiable" to modify "minor" like that employed in the federal child pornography statute leaves the interpretation of this statute too uncertain to construe it as only encompassing visual depictions of an actual minor child. *See* 18 U.S.C. § 2256(A),(C) (utilizing such language). In explaining this conclusion, the trial court stated that even though the term "minor" has been defined by the legislature as a "person," which has then been defined as a "human being," these definitions do not demonstrate that the legislature intended to prohibit only the use of actual minors as subjects and/or models for the production of the visual depiction proscribed under the statute. The trial court reasoned that, while those terms might be used to distinguish minors from adults or to define minors as persons or human beings in order to distinguish them from animals or other types of beings, the statutory language is not sufficient to require that the minor depicted in a visual depiction within the scope of the statute be an actual person. We disagree.

¶ 11 Sections 13–3551 and 13–3553 do not include any of the statutory language that caused the Supreme Court to invalidate portions of the CPPA in *Free Speech Coalition* based on whether actual minors were participating in child pornography. The premise of both *Ferber* and *Free Speech Coalition* is that a state can penalize conduct relating to these types of material without meeting the more exacting standard for obscenity because the material involves actual children actually participating in the acts depicted. The crime is the abuse of the children.[8] The statutory description of the prohibited material is stated as "any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S § 13–3553(A)(2). Unlike the federal statutes invalidated in *Free Speech Coalition,* there is no "appears to be" or "conveys the impression" language in A.R.S. § 13–3553 indicating an intent to encompass material in which an actual child was not involved. Section 13–3553 simply uses the term "minor," which is further statutorily defined as a human being who was "under the age of eighteen years of age at a time the visual depiction was created, adapted or modified." This definition, by describing "minor" in the past tense, evidences a clear intent that the minor be an actual living human being in that it implies the subject has the ability to age, *i.e.,* become older through the passage of time. Fictitious persons do not possess this quality.

---

7. See n. 2, *supra.*

8. *E.g., Free Speech Coalition,* 122 S.Ct. at 1402 ("In contrast to the speech in *Ferber,* speech that is the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production").

¶ 12 This conclusion that the term "minor" as employed in A.R.S. § 13–3553 is intended to refer to an "actual child" finds further support in subsection (C) of the statute, which sets forth the penalty for the offense. This subsection states: "Sexual exploitation of a minor is a class 2 felony and if the minor is under fifteen years of age it is punishable pursuant to § 13–604.01." This inclusion of A.R.S. § 13–604.01, which provides for enhanced penalties for "dangerous crimes against children," clearly evidences legislative intent that the subject of the visual depiction be a real person. A "dangerous crime against children" is defined as one "committed against a minor who is under fifteen years of age." A.R.S. § 13–604.01(L)(1) (Supp.2002). One cannot commit a crime *against* a fictitious person. Consequently, there would be no way to reconcile A.R.S. § 13–3553(C) with the balance of the statute if the term "minor" were construed as encompassing something more than actual children. *See State v. Moerman*, 182 Ariz. 255, 260, 895 P.2d 1018, 1023 (App.1994) (when construing statute court must examine statute as a whole and give harmonious effect to all its sections).

### D.

¶ 13 The trial court offered five reasons beyond the specific language of the statute for finding that the legislature intended to extend the scope of A.R.S. § 13–3553 to depictions of conduct beyond those involving "actual children". We conclude that none of those reasons dictates a different interpretation of A.R.S. § 13–3553 than that reached based on the statutory language.

¶ 14 First, the trial court found that the stated legislative purpose for the enactment of the Sexual Exploitation of Children statutes included the following:

A. The State of Arizona finds that:

. . . .

4. The production and sale of materials in which the participants are represented as minors, *even though in fact they are not,* is dangerous to children since it may lead to a prurient interest in children as sexual objects and thus be a part of the sexual exploitation of children.

1978 Ariz. Sess. Laws, ch. 200, § 2 (emphasis added). In assuming that this particular finding was the impetus for enacting A.R.S. § 13–3553, the trial court ignored the fact that the legislature enacted several different statutes as part of an overall act to address the various concerns regarding sexual exploitation of minors identified in its findings. Among these was A.R.S. § 13–3555 (previously A.R.S. § 13–3554), which prohibits portraying an adult as a minor in any exploitive exhibition:

A. It is unlawful for any person depicted in a visual depiction or live act as a participant in any exploitative exhibition or sexual conduct to masquerade as a minor.

B. It is unlawful for any person knowingly to produce, record, film, photograph, develop, duplicate, distribute, transport, exhibit, electronically transmit, sell, purchase or exchange any visual depiction whose text, title or visual representation depicts a participant in any exploitive exhibition or sexual conduct as a minor even though such participant is an adult.

C. Any person who violates this section is guilty of a class 1 misdemeanor.

¶ 15 Given that A.R.S. § 13–3555 directly addresses the concern set forth in the legislative finding cited by the trial court, there is no reason for considering the above-quoted legislative finding as the basis for the enactment of A.R.S. § 13–3553.[9] It is just as reasonable to view the enactment of A.R.S. § 13–3553 as being directed at the other concerns described in the findings made by the legislature, including the harm caused by the "use of children in the production of pornographic materials." *See* 1978 Ariz. Sess. Laws, ch. 200, § 2(A)(1),(3). As such, the legislative findings do not compel a conclusion that A.R.S. § 13–3553 was intended

---

9. However, because A.R.S. § 13–3555 proscribes expressive conduct beyond the categories recognized in *Ferber* and *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), this statute, unlike A.R.S. § 13–3553, is clearly overbroad and unconstitutional. *Free Speech Coalition*, 122 S. Ct at 1405. The legislature expressly provided that the sections of the statutes dealing with sexual exploitation of children were severable so that if one section was held unconstitutional, such invalidity would not affect other provisions which could be given effect without the invalid provision. 1978 Ariz. Sess. Laws, ch. 200, § 4.

to prohibit anything other than visual depictions of actual children.

¶ 16 Second, the trial court found legislative intent to criminalize the depiction of minors under A.R.S. § 13–3553, without proof that actual minors needed to be involved, based on A.R.S. § 13–3556. This statute, which provides for "permissible inferences" in prosecutions relating to the sexual exploitation of children, states:

> In a prosecution relating to the sexual exploitation of children, the trier of fact may draw the inference that a participant is a minor if the visual depiction or live act through its title, text, or visual representation depicts the participant as a minor.

¶ 17 The language employed in this statute actually supports the opposite conclusion from that reached by the trial court in that the term "participant" implies the existence of an actual person as opposed to a fictitious character. By permitting an inference that the participant in the depicted conduct is a minor, the legislature re-enforced that its intent at least in § 13–3553 was solely to prohibit material using actual minors.[10]

¶ 18 Third, the trial court commented on the severity of the penalty imposed for a violation of A.R.S. § 13–3553. The court observed that each violation subjects an offender to a minimum prison term of 10 years per count and that each count must be served consecutively. Noting that the Supreme Court was likewise concerned with the severity of punishment in *Free Speech Coalition*, the trial court reasoned that the severity of punishment provided under Arizona law for a violation of A.R.S. § 13–3553 requires that this statute draw a clearer line between what is criminal and what is not to withstand constitutional challenge.

¶ 19 The severity of punishment, however, is immaterial to a determination of whether a statute is constitutionally overbroad.[11] As the Supreme Court observed in *Free Speech Coalition*, "even minor punishments can chill free speech." 122 S. Ct at 1398. The Supreme Court's discussion regarding the severity of the punishment in *Free Speech Coalition* was limited to the appropriateness of considering a "facial challenge" to the CPPA; it had no applicability to the ultimate outcome of that challenge. *Id.* at 1389–99. Either A.R.S. § 13–3553 infringes on expression protected by the First Amendment or it does not. Thus, even though the punishment for violating A.R.S. § 13–3553 is severe, this fact does not provide any support for invalidating the statute on First Amendment grounds.

¶ 20 Fourth, the trial court held that because of the breadth of the term "visual depiction," it was possible for a mere painting or image created on a computer screen to be punishable regardless of whether an actual child was involved in the depicted conduct. We do not so read the statute. As the Supreme Court observed in *Free Speech Coalition*, the phase " 'any visual depiction' does not depend at all on how the image is produced" and thus captures within its scope a wide range of depictions. 122 S.Ct. at 1397. The constitutionally of the statute at issue, however, does not turn on the particular form of the depiction, but rather its content. To the extent that a depiction involves sexually explicit images of actual children actually engaged in real or simulated conduct as defined by these statutes, such material continues to be properly subject to governmental prohibition under *Ferber*. *Free Speech Coalition*, 122 S.Ct. at 1396–97. Be-

---

**10.** However, as with A.R.S. § 13–3555, § 13–3556 also falls afoul of the holding in *Free Speech Coalition*. By permitting the trier of fact to infer "that a participant is a minor if the visual depiction or live act through its title, text or visual representation depicts the participant as a minor," § 13–3556 permits the trier of fact to convict a person under § 13–3553 even if no actual child was a participant in the depiction or live act. Section 13–3556, like 18 U.S.C. § 2556(8)(D), would permit a prosecution and conviction where no actual child was involved in the material or live act. Accordingly, like Sec-

tion 2556(8)(D), it is unconstitutionally overbroad.

We note that in *Hazlett* the State suggested that if the trial court was concerned about the effect of § 13–3556, it should hold that statute as unconstitutional but uphold § 13–3553. Our decision today adopts that suggestion and holds § 13–3556 unconstitutional.

**11.** We do not address whether the severity of the statutory punishments relating to child pornography are unconstitutional.

cause the scope of A.R.S. § 13–3553 is limited to visual depictions of actual children actually engaged in real acts or simulated acts that fall outside First Amendment protection, the trial court erred in concluding that this statute is constitutionally overbroad.

¶ 21 Fifth, in dismissing the indictments in three of these consolidated cases, the trial court focused on the term "simulated" in the definitions of "exploitive exhibition" and "sexual conduct" to hold A.R.S. § 13–3553 constitutionally overbroad.[12] The court reasoned that the inclusion of "simulated" sexual acts within the definitions results in A.R.S. § 13–3553 encompassing images of minors who are not actually exposed to sexual conduct and thereby may not be constitutionally prohibited under *Ferber*.

¶ 22 While §§ 13–3551(4), 13–3551(9) and 13–3551(10) all refer to actual or simulated conduct, the term "simulated" modifies the conduct which is depicted, not the participant in the conduct. Thus, the statute proscribes conduct related to the defined material only where such material involves actual children actually participating in real or simulated sexual conduct or exploitative exhibition.

### E.

¶ 23 The defendants also contend that the broad definitions of § 13–3551 permit the State to prosecute and convict persons possessing materials which have substantial literary, artistic, scientific or educational value simply because one small portion of the materials may contain exploitive exhibition or sexual conduct. This Court joins the United States Supreme Court in a similar concern. *See Free Speech Coalition*, 122 S.Ct. at 1400–01 (discussing recent artistic movies which contain scenes which could be deemed child pornography as defined by federal law and noting that if the movies fell within such proscription, the statute would be inconsis-

tent with the essential First Amendment rule that the artistic merit of a work does not depend on the presence of a single explicit scene); *Ferber*, 458 U.S. at 773, 102 S.Ct. at 3363 (noting that the Court would not assume that the New York courts would widen the reach of the state statutes by giving an expansive construction to the proscription on "lewd exhibition[s] of the genitals"); *id.*, 458 U.S. at 776, 102 S.Ct. at 3365 (Brennan, J., concurring) (stating that application of the New York state child pornography statutes to depictions of children that in themselves have serious literary, artistic, scientific or medical value would violate the First Amendment). *Compare id.*, at 775, 102 S.Ct. at 3364 (O'Connor, J. concurring) (state statutes might be overbroad if they bar depictions of clinical pictures in medical textbooks or photos of other cultures in magazines such as National Geographic; but court need not address that possibility because potential overbreadth was not sufficiently substantial to warrant invalidation of the New York statute).

¶ 24 We need not expand on that concern here for several reasons. First, the fact that a statute may in a case be applied to serious literary, artistic, scientific or educational materials does not require that the statute be held facially invalid. *See Osborne v. Ohio*, 495 U.S. 103, 112, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98 (1990) (where a statute regulates expressive conduct, "the scope of the statute does not render it unconstitutional unless its overbreadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep ... Even where a statute at its margins infringes on protected expression, facial invalidity is inappropriate if the remainder of the statute .... covers a whole range of easily identifiable and constitutionally proscribable conduct ...." [citations and internal quotation marks omitted].[13]

---

**12.** Section 13–3551(4) (Supp.2002) defines "exploitative exhibition" to mean "the actual or simulated exhibition of the genitals or rectal areas of any person for the purpose of sexual stimulation of the viewer."

Section 13–3551(9) (Supp.2002) provides, in relevant part, that "sexual conduct" means "actual or simulated: (a) Sexual intercourse ... (b) Penetration of the vagina or rectum ... (c) Sexual bestiality. (d) Masturbation, for the sexual

stimulation of the viewer. (e) Sadomasochistic abuse for the purpose of sexual stimulation of the viewer. (f) Defecation or urination for the purpose of sexual stimulation of the viewer".

Section 13–3551(10) (Supp.2002) defines "simulated" to mean "any depicting of the genitals or rectal areas that gives the appearance of sexual conduct or incipient sexual conduct."

**13.** Curiously, the defendants phrased their attack below that the statute was unconstitutional as

¶ 25 Second, as a matter of public policy and judicial restraint we will not assume without more that the state is or will seek to prosecute such types of materials under § 13–3553. *Ferber,* 458 U.S. at 773, 102 S.Ct. at 3363.

¶ 26 Third, given the state of the record, we do not know if the materials at issue here could arguably fall within any definition of having serious literary, artistic, scientific or educational value. *See State v. Tocco,* 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988) (overbreadth attack is directed to application rather than facial invalidity of statute). If such a claim is made, the trial court and the appellate courts can address those circumstances on a case-by-case basis. *Ferber,* 458 U.S. at 774, 102 S.Ct. at 3363; *United States v. Lamb,* 945 F.Supp. 441, 449 (N.D.N.Y.1996); *State v. Fan,* 445 N.W.2d 243, 246 (Minn. App.1989). *Cf. State v. Musser,* 194 Ariz. 31, 33, ¶¶ 7 and 10, 977 P.2d 131, 133 (1999) (overbreadth attack on statute could be dealt with on as applied basis if State sought to expand statute to protected conduct). Alternatively, if the State seeks to apply the statute to serious literary, artistic, scientific or educational value, the trial court and this Court can determine whether the test for child pornography may need to be modified under our state constitution to protect such materials. *Lamb, id.*

¶ 27 Fourth, both the statute at issue and prior Arizona case law have attempted to deal with this issue. A statute is to be read and applied in accordance with any special statutory definitions of the terms it uses. *US West Communications, Inc. v. City of Tucson,* 198 Ariz. 515, 520, ¶ 12, 11 P.3d 1054, 1059 (App.2000). The legislature has provided specific limited definitions for the terms "exploitive exhibition" and "sexual conduct" which attempt to limit the scope of the child pornography statutes to material which has the purpose of sexual stimulation of the viewer.

¶ 28 Of equal import, the United States Supreme Court, this Court and other courts have emphasized that under these types of statutes, the material, at a minimum, must be lewd and lascivious. *Osborne, id.,* 495 U.S. at 113–14 and n. 9, 110 S.Ct. at 1698 and n. 9; *Ferber,* 458 U.S. at 762–63, 773, 102 S.Ct. at 3357, 3363; *State v. Gates,* 182 Ariz. 459, 462–63, 897 P.2d 1345, 1348–49 (App. 1994); Benjamin J. Vernia, Anno., *Validity, Construction, and Application of State Statutes or Ordinances Regulating Sexual Performance by Child,* 42 A.L.R.5th 291, §§ 4–5, 1996 WL 591469 (1996).

### III.

¶ 29 The terms "minor" and "simulated" as employed in A.R.S. §§ 13–3551 and 13–3553 are reasonably construed as requiring that the material prohibited under this statute depict an "actual child" actually engaged in real or simulated sexually exploitive exhibition. Given this construction, on which the jury must be instructed,[14] A.R.S. § 13–3553 does not on its face infringe on expression protected by the First Amendment or Ariz. const. art. II, § 6. Thus, the rulings by the trial court finding A.R.S. § 13–3553 to be constitutionally overbroad are reversed, the orders dismissing the indictments are vacated, and these matters are remanded to the trial court for further proceedings consistent with this opinion.

CONCURRING: JAMES B. SULT, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.

---

applied to them, but argued that the statute was facially unconstitutional. The trial court held § 13–3553 invalid on its face. Given the state of the record and the arguments before this court, we only address the alleged facial invalidity of the statute.

**14.** *Osborne,* 495 U.S. at 123–25, 110 S.Ct. at 1703–05.