OPINION
EHRLICH, Judge.
¶ 1 Morton Robert Berger appeals his twenty convictions and sentences for sexual exploitation of a minor based on his possession of child pornography. He argues (1) that to punish the possession of child pornography more than the indecent exposure depicted in the images violates the federal and state constitutional guarantees of the equal protection of the law; (2) that the legislative approach to the possession of child pornography when compared with its approach to the commercial production of child pornography also violates the guarantees of equal protection; (3) that the cumulative sentence violates the federal and state constitutional prohibitions against cruel and unusual punishment; and (4) that the severity of his sentences warrants reduction by this court. We conclude that the legislature’s means of addressing the matter of child pornography is constitutional and that it is not appropriate for this court to reduce Berger’s sentences. Accordingly, we affirm his convictions and sentences for reasons that follow.

*378
FACTUAL AND PROCEDURAL HISTORY

¶ 2 Berger was charged with thirty-five counts of sexual exploitation of a minor younger than fifteen years of age in violation of Arizona Revised Statutes (“A.R.S.”) § 13-3553(A) (Supp.2004).[1] Each offense is a class 2 felony and dangerous crime against children punishable by a prison term of ten to twenty-four years without the possibility of probation, early release or pardon, and each sentence must be served consecutively. A.R.S. § 13-3553(C); see also A.R.S. §§ 13-604.01 (Supp.2004), 13-702 (Supp.2004).
¶ 3 In a trial motion challenging the constitutionality of A.R.S. § 13-3553, Berger contended that the sentencing scheme as applied to him constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 2, section 15 of the Arizona Constitution.[2] He specifically argued that there was a gross disproportionality between the offenses with which he had been charged and the mandatory minimum sentence facing him as a middle-aged first offender and a married teacher with children of his own who had no criminal history and who did “no more than possess images” produced and distributed by other, unknown individuals. He also maintained that the sentence he faced was grossly disproportionate when compared to sentences for other crimes in Arizona and to sentences for the same crime in other states.
¶ 4 The trial court denied the motion, relying in part on State v. DePiano, 187 Ariz. 27, 926 P.2d 494 (1996), cert. denied, 519 U.S. 1098, 117 S.Ct. 782, 136 L.Ed.2d 726 (1997).[3] It found, first, that the sentence was not grossly disproportionate given the societal harm of child pornography and, second, that the mandated imposition of consecutive sentences, each a minimum of ten years in prison, did not result in cruel and unusual punishment.
¶ 5 Upon the prosecutor’s motion, the trial court dismissed fifteen counts of the indictment, and the jury found Berger guilty as charged in the remaining twenty counts. The court sentenced Berger to the minimum and mitigated sentence, twenty consecutive ten-year terms of imprisonment, and Berger appealed.

DISCUSSION

A. The Constitutional Guarantees of Equal Protection

¶ 6 Berger contends that imposing a punishment for the possession of child pornography that is more severe than the punishment for the act of indecent exposure being portrayed violates the federal and state constitutional guarantees of the equal protection of the law.[4] He also contends that his guarantee of equal protection is violated because the legislature imposed the same range of punishment both for sexual exploitation of a minor and for commercial sexual exploitation of a minor, although commercial sexual exploitation is a more serious crime. Constitutional challenges to a statute are reviewed de novo by this court. Martin v. Reinstein, 195 Ariz. 293, 301 ¶ 16, 987 P.2d 779, 787 (App.1999).
*379 ¶7 The state and federal equal-protection guarantees “have for all practical purposes the same effect[,]” Valley Nat'l Bank of Phoenix v. Glover, 62 Ariz. 538, 554, 159 P.2d 292, 299 (1945), and Berger does not contend otherwise. They “are designed to secure equal opportunity for those who are similarly situated.” Martin, 195 Ariz. at 309 ¶ 49, 987 P.2d at 795; see State v. Navarro, 201 Ariz. 292, 298 ¶ 25, 34 P.3d 971, 977 (App.2001); Glover, 62 Ariz. at 554-55, 159 P.2d at 299-300. Equal protection, however, “does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification.” Navarro, 201 Ariz. at 298 ¶ 25, 34 P.3d at 977 (quoting In re Maricopa County Juv. Action No. J-72804, 18 Ariz.App. 560, 565, 504 P.2d 501, 506 (1972)).
¶ 8 The legal standard applicable to the legislature’s distinctions between one who possesses child pornography and one who engages in acts of indecent exposure, and between one who engages in the sexual exploitation of a minor and one who engages in the commercial sexual exploitation of a minor, is the same: whether there is a rational basis for the distinction given that the statutory design implicates neither a suspect class nor a fundamental right. See City of Tucson v. Pima County, 199 Ariz. 509, 516 ¶ 21, 19 P.3d 650, 657 (App.2001).
Rational basis review imposes on Petitioners, as the parties challenging the constitutionality of the Act, the burden of establishing that the law is unconstitutional by demonstrating that there is no conceivable basis for the Act. A legislative enactment challenged under the rational basis test will pass constitutional muster unless it is proved beyond a reasonable doubt to be wholly unrelated to any legitimate legislative goal. Moreover, the law “need not be in every report logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and th[at] it might be thought that the particular legislative measure was a rational way to correct it.”
Martin, 195 Ariz. at 309-10 ¶ 52, 987 P.2d at 795-96 (citations omitted); see State v. Smith, 166 Ariz. 450, 453, 803 P.2d 443, 446 (App.1990) (A statute fails if its classification is based on reasons “wholly irrelevant to the achievement of the state’s objectives.”) (Quoting Bryant v. Cont’l Conveyor Equip. Co., 156 Ariz. 193, 196-97, 751 P.2d 509, 512-13 (1988)); State v. Hammonds, 192 Ariz. 528, 531 ¶ 8, 968 P.2d 601, 604 (App.1998) (“[A] statute must be rationally related to furthering a legitimate governmental interest.”); State v. McInelly, 146 Ariz. 161, 163, 704 P.2d 291, 293 (App.1985) (If the legislative reasoning is related to public health, safety or welfare, we will not question the legislature in passing the statute.).
¶ 9 “It is evident beyond the need for elaboration that a State’s interest in ‘safeguarding the physical and psychological well-being of a minor’ is ‘compelling.’ ” Osborne v. Ohio, 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (quoting New York v. Ferber, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). The legislature’s designation of possession of child pornography as a class 2 felony and dangerous crime against children is a legitimate statement from Arizona’s elected representatives about the harm caused by such materials; it does not violate equal protection.
¶ 10 As to Berger’s first contention, the class of persons who engage in acts of indecent exposure does pose a different harm than does the class of persons who possess child pornography. Contrary to an act of indecent exposure, which ends upon completion of the act, the victimization of a child continues when that act is memorialized in an image. See Ferber, 458 U.S. at 759, 102 S.Ct. 3348 (“[T]he materials produced are a permanent record of the children’s participation and the harm to the child is exacerbated by them circulation.” (Footnote omitted)); United States v. Norris, 159 F.3d 926, 929 (5th Cir.1998), cert. denied, 526 U.S. 1010, 119 S.Ct. 1153, 143 L.Ed.2d 219 (1999) (“Unfortunately, the Victimization’ of the children involved does not end when the pornographer’s camera is put away.”). “The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and *380 mental health of the child.” Osborne, 495 U.S. at 109, 110 S.Ct. 1691 (quoting Ferber, 458 U.S. at 756-58, 102 S.Ct. 3348); see State v. Hazlett, 205 Ariz. 523, 527 ¶ 11, 73 P.3d 1258, 1262 (App.2003) (“The crime is the abuse of the children.” (Footnote omitted.)).
¶ 11 As to Berger’s second contention, it is reasonable for the state legislature to conclude that the possession of child pornography drives that industry and that the production of child pornography mil decrease if those who possess the product are punished equally with those who produce it. See Osborne, 495 U.S. at 109-110, 110 S.Ct. 1691 (“It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.”); id. at 111, 110 S.Ct. 1691 (“The State’s ban on possession and viewing encourages the possessors of these materials to destroy them.”); Ferber, 458 U.S. at 756-64, 102 S.Ct. 3348 (discussing reasons for prohibiting child pornography, including economic motive); Norris, 159 F.3d at 930 (“[T]here is no sense in distinguishing ... between the producers and the consumers of child pornography. Neither could exist without the other.”); United States v. Ketcham, 80 F.3d 789, 793 (3rd Cir.1996) (Statute making criminal “subsequent transportation, distribution, and possession of child pornography discourages its production by depriving would-be producers of a market.”); State v. Taylor, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989) (By penalizing possession and production equally, the legislature “convey[s] a statutory intent that the consumer of child pornography be dealt with severely.”); State v. Emond, 163 Ariz. 138, 142, 786 P.2d 989, 993 (App.1989) (“[D]rying up the market is the only way to effectively combat the production of child pornography.”). As the federal legislature has found, the possession of child pornography “inflames the desires of child molesters, pedophiles, and child pornographers.” Norris, 159 F.3d at 930 (quoting Child Pornography Prevention Act of 1996, Pub.L. 104-208, § 121, 110 Stat. 3009-27); see also Osborne, 495 U.S. at 111, 110 S.Ct. 1691 (“Evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.” (Footnote omitted.)).
¶ 12 The State has more than a passing interest in forestalling the damage caused by child pornography; preventing harm to children is, without cavil, one of its most important interests. See, e.g., Osborne, 495 U.S. at 110-111, 110 S.Ct. 1691 (“Given the importance of the State’s interest in protecting the victims of child pornography, we cannot fault [the State] for attempting to stamp out this vice at all levels in the distribution chain---- Indeed, 19 States have found it necessary to proscribe the possession of this material.” (Footnote omitted.)). The legislature’s designation of possession of child pornography as a more serious offense than the act of indecent exposure[5] and its refusal to distinguish between the commercial and non-commercial sexual exploitation of minors is rationally related to furthering the State’s interest in protecting children. Berger’s constitutional guarantees of equal protection are not violated.[6]

B. Whether Application of A.R.S. § 13-3553 Resulted in Cruel and Unusual Punishment

¶ 13 Berger argues that the application of A.R.S. § 13-3553(C) to him resulted in a cumulative sentence that is unconstitutionally cruel and unusual punishment. This challenge to the statute is reviewed de novo. Martin, 195 Ariz. at 301 ¶ 16, 987 P.2d at 787.
*381 ¶ 14 “[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime.” Ewing v. California, 538 U.S. 11, 21, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (quoting Rummel v. Estelle, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)); see Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (Eighth Amendment prohibits “sentences that are disproportionate to the crime committed.”); see also Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (There is “one governing legal principle” in Eighth Amendment jurisprudence: “A gross disproportionality principle is applicable to sentences for terms of years.”). "While the “precise contours” of this proposition may be unclear, it nonetheless is applicable only in the “exceedingly rare” and “extreme” cases. Andrade, 538 U.S. at 73, 123 S.Ct. at 1173 (citing Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment) (other citations omitted)); Rummel, 445 U.S. at 272, 100 S.Ct. 1133 (“Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.”) (cited in Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680).
¶ 15 The judicial reserve in declaring punishments unconstitutional because cruel and unusual is consistent with the deference to which the legislature is due. Indeed, one of the principles of Eighth Amendment proportionality review directing Justice Kennedy’s concurrence in Harmelin, that in turn guided the Court’s analysis in Ewing, was “the primacy of the legislature.” Ewing, 538 U.S. at 23, 123 S.Ct. at 1186 (quoting Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680).
Our traditional deference to legislative policy choices finds a corollary in the principle that the Constitution does not mandate adoption of any one penological theory. A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation. Some or all of these justifications may play a role in a State’s sentencing scheme. Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts.
Id. at 1187, 111 S.Ct. 2680 (citations omitted); see id. at 1189, 111 S.Ct. 2680 (Any “criticism is appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme.”); Andrade, 538 U.S. at 76, 123 S.Ct. at 1175 (“[T]he governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle....”).
¶ 16 The same respect for the legislative branch of government is as true of state courts as it is of federal courts. Thus we also give substantial deference to the legislature’s authority to fix the punishment for a crime. See State v. Wagstaff, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990) (“Defining crimes and fixing penalties are legislative, not judicial, functions.”); id. at 492, 794 P.2d at 125 (“Proscribing conduct and determining appropriate sanctions for those who deviate from the accepted norms of conduct is purely a legislative function.”); State v. Mulalley, 127 Ariz. 92, 97, 618 P.2d 586, 591 (1980) (“The judiciary ... should not interfere in [the legislative] process unless a statute prescribes a penalty ‘out of all proportion to the offense.’ ”) (Quoting In re Lynch, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 930 (1972)), overruled on other grounds by State v. Noble, 152 Ariz. 284, 731 P.2d 1228 (1987).[7]
*382 ¶ 17 The Court in Solem, 463 U.S. at 292, 103 S.Ct. 3001, enunciated three factors that it considered relevant to a determination whether a sentence is grossly disproportionate to the offense and therefore constitutes cruel and unusual punishment, factors that it reiterated in Ewing, 538 U.S. at 22, 123 S.Ct. at 1186, and that were utilized by the Arizona Supreme Court in Davis, 206 Ariz. at 381 ¶ 15, 79 P.3d at 68, and by this court in State v. Long, 207 Ariz. 140, 145 ¶ 25, 83 P.3d 618, 623 (App.2004). The initial query is whether there is an inference that the sentence is grossly disproportionate to the severity of the offense. Long, 207 Ariz. at 146 ¶ 28, 83 P.3d at 624. If it is, we then compare the sentence with sentences for other offenses in Arizona (intra-jurisdictional analysis) and with the sentence imposed for the same crime in other states (inter-jurisdictional analysis). Id. at 147 ¶ 34, 83 P.3d at 625; see also Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (stating that reviewing courts should only consider the second and third factors “in the rare ease in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross dis-proportionality”).
¶ 18 To answer the initial query whether there is an inference of gross disproportionality between Berger’s offenses and his sentences, we consider the facts of the case and the circumstances of the offender. Long, 207 Ariz. at 145-46 ¶ 27, 83 P.3d at 623-24, (citing Davis, 206 Ariz. at 384 ¶ 34, 79 P.3d at 71). Berger was a teacher, a husband and a father. He was neither immature nor of a subnormal level of intelligence unlike the defendants in Davis, 206 Ariz. 377, 79 P.3d 64,[8] and State v. Bartlett (Bartlett II),[9] 171 Ariz. 302, 830 P.2d 823,[10] cert. denied, 506 U.S. 992, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992). He was not “caught in the very broad sweep” of the law against sexual exploitation. Davis, 206 Ariz. at 385 ¶ 36, 79 P.3d at 72. He was, rather, a prototypical offender.[11]
*383 ¶ 19 Berger claims that his sentence is disproportionate because he was convicted of possessing child pornography and not of producing or selling it. He adds that he did not financially support the child-pornography industry because there was no evidence that he made purchases.
¶ 20 The legislature has declared its intent that the “consumer of child pornography” be penalized as “severely” as those who produce the product. See Taylor, 160 Ariz. at 420, 773 P.2d at 979; A.R.S. § 13-3553. Berger downloaded images from the internet, and, every time he visited a website, he demonstrated to the producers and sellers of child pornography that there was a demand for their product. Berger’s demand served to drive the industry; there need not have been a direct monetary exchange. See Osborne, 495 U.S. at 109-10, 110 S.Ct. 1691 (“It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.”); Norris, 159 F.3d at 930 (“[T]here is no sense in distinguishing ... between the producers and the consumers of child pornography. Neither could exist without the other.”); Ketcham, 80 F.3d at 793 (making criminal possession of child pornography “discourages its production by depriving would-be producers of a market.”); Emond, 163 Ariz. at 142, 786 P.2d at 993 (“[D]rying up the market is the only way to effectively combat the production of child pornography.”).
¶ 21 Berger maintains also that, because his possession of the pornographic images was passive and because he did not use threats or violence in the commission of his crimes, his sentence is grossly disproportionate. This logic is abstruse. As was described by this court in Hazlett, 205 Ariz. at 527 ¶ 11, 73 P.3d at 1262, and as is evident from the violent pornographic images in this case, child pornography is a form of child abuse. Thus, by Berger’s support of the child-pornography industry, he supported the subornation of the children). This is in contrast with the voluntary sexual intercourse involved in Davis and Bartlett II.
¶ 22 Berger claims that, because the children depicted in the images are unaware that he is in possession of or viewing their images, they are not further victimized after the image is taken. As stated above, that proposition is not true because the victimization of the child continues. “[T]he materials produced are a permanent record of the children’s participation and the harm to the child is exacerbated by their circulation.” Norris, 159 F.3d at 929 (quoting Ferber, 458 U.S. at 759, 102 S.Ct. 3348).
¶ 23 Additionally, the possession of child pornography prompts the victimization of children other than those depicted. Berger, as a consumer of child pornography, provided an economic motive for its creation and continuation; absent such encouragement and enablement, these children would not have been abused as they were. Id. at 930; see also Osborne, 495 U.S. at 109-10, 110 S.Ct. 1691. “The crime is the abuse of the children.” Hazlett, 205 Ariz. at 527 ¶ 11, 73 P.3d at 1262 (footnote omitted).
¶ 24 Berger argues that, because he had no prior convictions or history of inappropriate sexual conduct involving children, his sentence is cruel and unusual since any legislative concern regarding recidivism is not pertinent. First, to the degree that recidivism was a legislative issue, it was but one concern. See Ewing, 538 U.S. at 25, 123 S.Ct. at 1187 (multiple justifications for sentence).
¶ 25 Second, Berger does not have a criminal history because his offenses were not discovered earlier. Berger was storing files depicting graphic images of child pornography as early as 1996, and he does not protest the State’s contention that, when discovered, he possessed thousands of images of child pornography. See State v. Zimmer, 178 Ariz. 407, 410, 874 P.2d 964, 967 (App.1993), cert. denied, 540 U.S. 1165, 124 S.Ct. 1179, 157 L.Ed.2d 1212 (2004) (comparing Zimmer’s case to Bartlett II and finding that, although Zimmer lacked a criminal history, “he admitted numerous prior episodes of *384 nonconsensual touching involving others as well as this vietim[ ]”).
¶ 26 Berger also argues that the mandatory consecutive nature of his sentences renders the cumulative punishment grossly disproportionate. The compulsory nature of a sentence does not make it disproportionate per se, particularly when the trial court has discretion to impose the mitigated end of a scale, see State v. Jonas, 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990),[12] and the Supreme Court has “never invalidated a penalty mandated by a legislature based only on the length of sentence!!]” Harmelin, 501 U.S. at 1006-07, 111 S.Ct. 2680; see State v. Jackson, 186 Ariz. 490, 491, 924 P.2d 494, 495 (App.1996) (“Whether mandatory prison sentences are not appropriate in every situation is a question for the law-making body, not the courts.”) (Quoting State v. Molina, 118 Ariz. 250, 251, 575 P.2d 1276, 1277 (App.1978)); Zimmer, 178 Ariz. at 409, 874 P.2d at 966 (citing Harmelin, 501 U.S. 957, 111 S.Ct. 2680, for proposition that “mandatory sentencing statutes are not per se violative of the eighth amendment ]”). Furthermore, as the court wrote in Davis, we usually do not consider the imposition of consecutive sentences when determining proportionality. 206 Ariz. at 387 ¶ 47, 79 P.3d at 74 (“[T]his court normally will not consider the imposition of consecutive sentences in a proportionality inquiry)!]”); see United States v. Parker, 241 F.3d 1114, 1117 (9th Cir.2001) (sentence within statutory limits commonly upheld upon Eighth Amendment challenge).
¶ 27 Unlike the defendant in Davis, nothing in Berger’s case “cries out for departure from that general rule.” 206 Ariz. at 387 ¶ 47, 79 P.3d at 74 (“Although this court normally will not consider the imposition of consecutive sentences in a proportionality inquiry, this case cries out for departure from that general rule.”). The evidence in Davis that the punishment was “so severe as to shock the conscience of soeiety[ ]” was overwhelming, id. at 388 ¶ 49, 79 P.3d at 75, whereas in Berger’s case it is not. In Davis, the State recommended mitigated sentences, the probation officer who prepared the presentence report stated that the mandatory sentences were not warranted and even the victims’ mothers did not want Davis to be sentenced to a long prison term. Id. at 380 ¶ 9, 79 P.3d at 67. Also, when the jurors learned of the minimum sentences, “all twelve jurors submitted a note to the trial judge stating their belief that ‘the punishment for the crime is excessive.’ Two jurors submitted individual letters expressing then dismay and strong belief that the potential sentences for Davis were too harsh.” Id. Further, upon sentencing, the trial judge entered an order allowing Davis to apply for executive clemency within ninety days of sentencing. Id. at 380 ¶ 10, 79 P.3d at 67.
¶ 28 In marked contrast to Davis’ ease, in Berger’s case, the State recommended presumptive sentences at a minimum, and the author of the pre-sentence report did not recommend the minimum sentences but, rather, that Berger “be sentenced to less than the presumptive term for all twenty counts.” The trial judge received but one post-trial letter from an anonymous juror expressing concern with the possible sentence. While the experienced judge sentenced Berger to minimum sentences, she also recognized that “the legislature has made it very clear that this is an extremely serious crime,” giving her opinion without apparent reservation that the applicable sentencing range of consecutive sentences from ten to twenty-four years each was not so grossly disproportionate as to suggest to her that it was cruel and unusual punishment.[13] In this regard, she did not propose — as she could have — a special order allowing Berger to seek executive clemency. A.R.S. § 13-603(L) (Supp.2004). This is not a case with the same if any “shock” to societal conscience as was Davis.[14]
*385 ¶ 29 Considering all of the facts and circumstances, and given our deference to the legislature’s decisions regarding what behavior to make criminal and the appropriate punishment, there is no inference of gross disproportionality in Berger’s sentence. There is, accordingly, no need for intra- and inter-jurisdictional analyses. Long, 207 Ariz. at 147 ¶ 34, 83 P.3d at 625; see Davis, 206 Ariz. at 385 ¶ 38 n. 6, 79 P.3d at 72. The federal and state constitutional prohibitions against cruel and unusual punishment have not been violated in this case.

C. Invocation of A.R.S. § 13-4037

¶ 30 Berger asks us to exercise the authority of A.R.S. § 13-4037(B) (2001)[15] to reduce his sentence by making the twenty ten-year consecutive terms concurrent. Alternatively, he requests that we remand this case to the trial court with instructions that it sentence him to a prison term of one to ten years for each of the twenty counts.
¶ 31 An appellate court must exercise its authority under this statutory provision with great caution, State v. Fillmore, 187 Ariz. 174, 185, 927 P.2d 1303, 1314 (App.1996), and a trial court’s sentence within statutory limits ordinarily will be upheld absent an abuse of its discretion, Long, 207 Ariz. at 147 ¶ 37, 83 P.3d at 625, although in Davis, the court converted Davis’ crimes from dangerous crimes against children to non-dangerous offenses without an express finding that the trial court had abused its discretion. 206 Ariz. at 387-88 ¶¶ 47-48, 79 P.3d at 74-75. In light of this authority, we apply the following rule: Absent a trial court’s abuse of discretion or the imposition of an unlawful sentence, we will not reduce a sentence unless such a reduction is warranted by such extraordinary circumstances as to make the sentence inconsistent with statutory intent. See State v. Levitt, 155 Ariz. 446, 448, 747 P.2d 607, 609 (App.1987) (power to modify sentence will be exercised only in extraordinary circumstances).[16] Such extraordinary circumstances do not exist in Berger’s ease, certainly not so much as to thwart the execution of the legislature’s judgment. We therefore decline to exercise our authority to reduce Berger’s sentences or to remand this case to the trial court with instructions to enter lesser sentences.

CONCLUSION

¶ 32 Berger’s convictions and sentences are affirmed.
CONCURRING: PHILIP HALL, Judge.

. A. A person commits sexual exploitation of a minor by knowingly:
* * *
2 ____possessing ... any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.

. The Eighth Amendment and Article 2, § 15, are virtually identical. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted,” whereas in the Arizona Constitution the singular "punishment” is used. In State v. Davis, 206 Ariz. 377, 380-81 ¶ 12, 79 P.3d 64, 67-68 (2003), cert. denied, — U.S. —, 124 S.Ct. 2097, 158 L.Ed.2d 723 (2004), the Arizona Supreme Court considered whether Arizona’s constitutional prohibition against cruel and unusual punishment provided greater protection than its federal counterpart, but it found no compelling reason to so find and neither do we.

. The court in DePiano favored an Eighth Amendment approach that did not analyze the particular circumstances of the crime or the offender. After Berger’s sentencing, DePiano was overruled in Davis, 206 Ariz. at 384 ¶ 34, 79 P.3d at 71.

. The former is a class 2 felony, A.R.S. § 13-3553(C), while the latter is a class 6 felony. A.R.S. § 13-1402(B) (2001).

. It is more than legitimate for the legislature to so distinguish between the offenses of possession of child pornography, a class 2 felony, and indecent exposure, a class 6 felony; indeed, there is no parallel. The crime of indecent exposure has been denominated by the legislature as a lesser felony because the act, while intentional, is performed with a reckless disregard to the nature of the offense. The possession of images in which children perform or adults respond to children with acts of indecent exposure is a societal harm of a proportionately greater degree.

. Berger contended that A.R.S. § 13-3553 is unconstitutionally overbroad, but he since has conceded that this issue was addressed and rejected in Hazlett, 205 Ariz. 523, 73 P.3d 1258.

. The exercise of judicial restraint in a case such as this is not, as the dissent would have, another judicial hearing when the trial court already has imposed the minimum and mitigated sentence passed by the legislature, but the deference to which the judicial branch owes the legislative and executive branches. Indeed, the propriety and constitutional necessity of this deference is well illustrated by the subjectivity of the dissent’s careful few selections from memorandum decisions of this court of criminal cases, cases that even as presented do not have a sufficient context in which to evaluate the relationship among the criminal, the crime, the sentence and the myriad of other criminal cases decided by the courts of this state.
The correctness of deference also is illustrated by the Eighth Amendment opinions of the United States Supreme Court in Ewing, 538 U.S. 11, 123 *382 S.Ct. 1179, and Andrade, 538 U.S. 63, 123 S.Ct. 1166, in which cases the Court addressed the California "three strikes law” to the general effect that an individual who commits a third offense will be confined to prison for the rest of his life. After a criminal history largely comprised of theft and burglary, Ewing’s third strike was the theft of three golf clubs. Andrade’s third strike was two separate thefts of videotapes, five tapes worth $84.70 and four tapes worth $68.84.

. The Arizona Supreme Court found that the sentence of imprisonment for fifty-two years without the possibility of parole or early release for Davis, a twenty-two year-old defendant, grossly disproportionate to the offenses, four counts of sexual misconduct with a minor, dangerous crimes against children. 206 Ariz. at 379-80 ¶¶ 1, 7, 79 P.3d at 66-67. Davis’ sexual misconduct involved having voluntary sexual intercourse with two post-pubescent teenage girls. Id. at 379 ¶¶ 2-3, 79 P.3d at 66. In so finding, the court considered the following factors: lack of threatened or actual violence, the victims’ willingness to participate in the sexual acts (even though they could not lawfully consent to the acts), lack of a criminal record, the fact that post-pubescent sexual conduct was not uncommon, Davis' lower intelligence and maturity level than that of other young adults, and the broad sweep of the laws that constitute dangerous crimes against children. Id. at 384—85 ¶ 36, 79 P.3d at 71-72.

. We recognize that Bartlett II was overruled by DePiano, 187 Ariz. at 30, 926 P.2d 494, when the DePiano court determined "the initial threshold disproportionality analysis is to be measured by the nature of the offense generally and not specifically.” However, the holding in Bartlett II was essentially reinstated when Davis, 206 Ariz. 377, 79 P.3d 64, effectively overruled DePiano on the same issue.

. The Arizona Supreme Court found that the sentence of imprisonment for forty years without the possibility of parole or early release for Bartlett, a twenty-three year-old defendant, grossly disproportionate to the offenses, two counts of sexual conduct with a minor, dangerous crimes against children. 171 Ariz. at 303, 306, 311, 830 P.2d at 824, 827, 832. Bartlett's sexual misconduct involved having voluntary sexual intercourse with two post-pubescent teenage girls. Id. at 306, 830 P.2d at 827. In so finding, the court considered all of the same factors that it considered in Davis, 206 Ariz. at 384-85 ¶ 36, 79 P.3d at 71-72, with the exception of the last factor, as well as Bartlett’s lack of intent to physically or emotionally harm the girls, the evolution of the law and the sentencing standards at the time. Id. at 307-09, 830 P.2d at 828-30.

. While the number of images that were found in Berger’s house could not be quantified, the evidence was not disputed that Berger maintained files of images of child pornography at his house, some literal and some on his computer in a directory entitled "Mort's stuff" that itself included several subdirectories filled with graphic images of child pornography, photographs and video. In its motion to dismiss fifteen of the thirty-five counts of the indictment, the State *383 gave as its reason its wish to spare the jury the sights of more disturbing images, and, in fact, Berger does not dispute the State's assertion on appeal that he had a "well-organized collection of thousands of photographs depicting children engaged in sexual activity.”

. Nothing in the Davis opinion changes this aspect of the analysis in Jonas contrary to the suggestion of the dissent.

. Of course, any conclusion about a constitutional violation is a matter of law that is decided de novo by this court, making the trial court's determination legally irrelevant.

. The dissent mentions that Berger ostensibly has some compulsion from childhood to collect sets of images. First, the images that are the subject of his convictions are not mere “photo *385 graphic images”; Berger possessed child pornography. Second, the risk-assessment report in which this impulse is mentioned is not a part of the record, suggesting that its genesis made it inappropriate to include for sentencing purposes because, were it not, either the experienced trial counsel or the experienced trial judge or the author of the pre-sentence report could — and one of them undoubtedly would — have asked that it be made a part of the record.

. Section 13-4037(B) provides:
Upon an appeal from the judgment or from the sentence on the ground that it is excessive, the court shall have the power to reduce the extent or duration of the punishment imposed, if, in its opinion, the conviction is proper, but the punishment imposed is greater than under the circumstances of the case ought to be inflicted. In such a case, the supreme court shall impose any legal sentence, not more severe than that originally imposed, which in its opinion is proper. Such sentence shall be enforced by the court from which the appeal was taken.

. Although the trial court relied upon the analysis in DePiano, 187 Ariz. at 30-31, 926 P.2d at 496-97, which subsequently was overruled in Davis, 206 Ariz. at 384 ¶ 34, 79 P.3d at 71, the court could not have given Berger less than the sentences that it imposed, consecutive mitigated prison terms of ten years without early release or pardon. Even had it held the opinion that the cumulative sentence constituted cruel and unusual punishment, this court, when confronted with the issue, would have reviewed it de novo as a matter of law.