SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-05-0101-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 03-0243 |
| MORTON ROBERT BERGER, | ) | |
| | ) | Maricopa County |
| Appellant. | ) | Superior Court |
| | ) | No. CR2002-013657 |
| | ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court in Maricopa County
The Honorable Ruth H. Hilliard, Judge

**AFFIRMED**

Opinion of the Court of Appeals, Division One
209 Ariz. 386, 103 P.3d 298 (2004)

**VACATED IN PART**

_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                Phoenix
     By    Randall M. Howe, Chief Counsel
           Criminal Appeals Section
           Robert A. Walsh, Assistant Attorney General
Attorneys for the State of Arizona

LAW OFFICES OF LAURIE A. HERMAN                      Scottsdale
     By    Laurie A. Herman
And

LAW OFFICES OF BALLECER & SEGAL                        Phoenix
     By    Natalee Segal
Attorneys for Morton Robert Berger

MILLER, LASOTA & PETERS PLC                            Phoenix
     By     Donald M. Peters
Attorneys for Amicus Curiae American Civil Liberties
Union of Arizona

_____

**B A L E S**, Justice

¶1      Based on his possession of child pornography, Morton Robert Berger was convicted of twenty separate counts of sexual exploitation of a minor under the age of fifteen and sentenced to twenty consecutive ten-year prison terms.  We hold that these sentences do not violate the Eighth Amendment's prohibition on cruel and unusual punishment.

## I.

¶2      Arizona severely punishes the distribution or possession of child pornography.  Under Arizona law, a person commits sexual exploitation of a minor, a class two felony, by knowingly "[d]istributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct."  Ariz. Rev. Stat. ("A.R.S.") § 13-3553(A)(2) (2002).  A "visual depiction," for purposes of this statute, "includes each visual image that is contained in an undeveloped film, videotape or photograph or data stored in any form and that is capable of conversion into a visual image."  A.R.S. § 13-3551(11).  If a depiction involves a minor under the age of fifteen, the offense is characterized as a dangerous crime against children.  A.R.S. § 13-3553(C).

¶3      Under this statutory scheme, the possession of each image of child pornography is a separate offense.  A.R.S. §§ 13-

3551(11), -3553(A)(2); *see also State v. Taylor*, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989) (affirming fifty consecutive sentences for possession of fifty contraband images obtained over time).  Consecutive sentences must be imposed for each conviction involving children under fifteen, and each such sentence carries a minimum term of ten years, a presumptive term of seventeen years, and a maximum term of twenty-four years. A.R.S. § 13-604.01(D), (F), (G), (K).  Such sentences must be served without the possibility of probation, early release, or pardon.  A.R.S. § 13-3553(C) (prescribing sentencing under § 13-604.01).

¶4      A grand jury indicted Berger on thirty-five separate counts of sexual exploitation of a minor based on his possession of printed photographs, computer photo files, and computer video files depicting children in sexual acts.  On the State's motion, the trial court dismissed fifteen counts, and trial proceeded on the twenty remaining counts.

¶5      The trial evidence established that Berger possessed numerous videos and photo images of children, some younger than ten years old, being subjected to sexual acts with adults and other children, including images of sexual intercourse and bestiality.  The jury also heard testimony indicating that, from 1996 to 2002, Berger had downloaded computer files containing child pornography; he had identified several "favorite" websites

3

with titles indicating they provided child pornography; he had recently viewed contraband material; and he had created both computer and hard copy filing systems to maintain his collection. The jury convicted Berger of twenty counts of sexual exploitation of a minor and found that each depiction involved a child under the age of fifteen.

¶6       The trial judge sentenced Berger to a ten-year sentence – the minimum mitigated sentence allowed – for each of his crimes and, as required by statute, ordered the sentences to be served consecutively. A.R.S. §§ 13-604.01, -3553(C). The court rejected Berger's argument that his sentences violated the Eighth Amendment's prohibition on cruel and unusual punishment. Berger appealed, and a divided panel of the court of appeals affirmed his convictions and sentences. *State v. Berger*, 209 Ariz. 386, 103 P.3d 298 (App. 2004). He petitioned for review, arguing that the rulings below conflict with this court's opinion in *State v. Davis*, 206 Ariz. 377, 79 P.3d 64 (2003).

¶7       We granted Berger's petition to again consider the framework for reviewing Eighth Amendment challenges to lengthy prison sentences. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. section 12-120.24 (2003).

¶8      The Eighth Amendment to the United States Constitution bars the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This provision "guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). "The right flows from the basic precept of justice that punishment for crime should be graduated and proportioned to the offense." *Id*. (internal quotation marks and citation omitted).

¶9      The Supreme Court has long recognized that the Eighth Amendment limits permissible sanctions in various contexts. For example, the Court has held that the death penalty cannot be imposed for the rape of an adult woman, on mentally retarded defendants, or on those who commit their crimes as juveniles. *See id.* at 568-69 (collecting cases). Likewise, the Court has held that a sentence to "12 years jailed in irons at hard and painful labor for the crime of falsifying records was excessive." *Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (citing *Weems v. United States*, 217 U.S. 349, 367 (1910)). The Court has also observed that "[e]ven one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Robinson v. California*, 370 U.S. 660, 667 (1962).

¶10     Although "the Eighth Amendment has been applied to lengthy sentences of incarceration," *Davis*, 206 Ariz. at 381, ¶

13, 79 P.3d at 68 (citation omitted), courts are extremely circumspect in their Eighth Amendment review of prison terms. The Supreme Court has noted that noncapital sentences are subject only to a "narrow proportionality principle" that prohibits sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 20, 23 (2003) (O'Connor, J., concurring in the judgment) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).

¶11     This court reviews Eighth Amendment challenges to the length of prison sentences under the framework outlined by Justice Kennedy in his concurring opinion in *Harmelin* and later employed by Justice O'Connor in announcing the judgment of the Court in *Ewing*. *Davis*, 206 Ariz. at 383, ¶ 30, 79 P.3d at 70.[1]

---

[1] The Supreme Court's Eighth Amendment proportionality decisions "have not established a clear or consistent path for courts to follow." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). In rejecting challenges to prison sentences in *Harmelin* and *Ewing*, a majority of the Court did not agree in any one opinion. In each case, two justices concluded that prison sentences cannot be challenged on proportionality grounds under the Eighth Amendment and stated they would overrule contrary precedent. *Ewing*, 538 U.S. at 31 (Scalia, J., concurring); *id.* at 32 (Thomas, J., concurring); *Harmelin*, 501 U.S. at 994 (Scalia, J., joined by Rehnquist, C.J., concurring). Justice Kennedy's opinion in *Harmelin* and Justice O'Connor's opinion in *Ewing* are the controlling opinions in those cases because they reflect the views of the justices concurring in the judgments on the narrowest grounds. *See Marks v. United States*, 430 U.S. 188, 193 (1977).

¶12     Under this analysis, a court first determines if there is a threshold showing of gross disproportionality by comparing "the gravity of the offense [and] the harshness of the penalty." *Ewing*, 538 U.S. at 28; *accord Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment) (same).  If this comparison leads to an inference of gross disproportionality, the court then tests that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime.  *Ewing*, 538 U.S. at 23-24; *Harmelin*, 501 U.S. at 1004-05 (Kennedy, J., concurring in part and concurring in the judgment).

¶13     In comparing the gravity of the offense to the harshness of the penalty, courts must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences.  The threshold inquiry is guided by several principles that include the primacy of the legislature in determining sentencing, the variety of legitimate penological schemes, the nature of the federal system, and the requirement that objective factors guide proportionality review.  *Ewing*, 538 U.S. at 23 (citing *Harmelin*, 501 U.S. at 997 (Kennedy, J., concurring in part and concurring in the judgment)).  These principles inform the broader notion that the Eighth Amendment "does not require strict proportionality between crime and sentence" but instead forbids

7

only extreme sentences that are "grossly disproportionate to the crime." *Id.* at 23 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment)) (internal quotation omitted).

¶14 In *Ewing*, the Court rejected an Eighth Amendment challenge to a prison term of twenty-five years to life under California's "three strikes law" for a recidivist offender convicted of stealing three golf clubs worth nearly $1200. Justice O'Connor's plurality opinion first considered the three strikes law in its general application. While recognizing that the law had been criticized for its lack of wisdom and lack of effectiveness, she noted that the State of California had a "reasonable basis" for believing the law would substantially advance the goals of incapacitating repeat offenders and deterring crime. *Id.* at 24-28. Against this backdrop, Justice O'Connor considered and rejected Ewing's argument that his sentence was unconstitutionally disproportionate. Acknowledging that his sentence was long, she concluded that "it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." *Id.* at 30.

¶15 Similarly, in *Harmelin*, the Court rejected an Eighth Amendment challenge to a mandatory sentence of life imprisonment without parole for a first-time offender convicted of possessing

8

672 grams of cocaine.  501 U.S. at 994-95.  In his plurality opinion, Justice Kennedy noted "that the Michigan legislature could with reason conclude that the threat posed to the individual and society by possession of this large an amount of cocaine — in terms of violence, crime, and social displacement — is momentous enough to warrant the deterrence and retribution of a life sentence without parole."  *Id.* at 1003-04 (noting Michigan legislature had a "rational basis" for determining to impose mandatory life sentence).

¶16     Recognizing that the penalty imposed on Harmelin was "severe and unforgiving" and that the deterrent effect of Michigan's law was still uncertain, Justice Kennedy nonetheless concluded that "we cannot say the law before us has no chance of success and is on that account so disproportionate as to be cruel and unusual punishment."  *Id.* at 1008.  Because there was no threshold showing of gross disproportionality, it was unnecessary to compare the sentence with others in Michigan or in other states.  *Id.* at 1005.

¶17     *Harmelin* and *Ewing* reaffirm that only in "exceedingly rare" cases will a sentence to a term of years violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Ewing*, 538 U.S. at 22 (citation omitted).  A court must first determine whether the legislature "has a reasonable basis for believing that [a sentencing scheme] 'advance[s] the goals of

9

[its] criminal justice system in any substantial way.'" *Id.* at 28 (quoting *Solem v. Helm*, 463 U.S. 277, 297 n.22 (1983)) (second and third alteration in original).  In light of that conclusion, the court then considers if the sentence of the particular defendant is grossly disproportionate to the crime he committed.  *Id.*   A prison sentence is not grossly disproportionate, and a court need not proceed beyond the threshold inquiry, if it arguably furthers the State's penological goals and thus reflects "a rational legislative judgment, entitled to deference." *Id.* at 30.  This framework guides our review of Berger's Eighth Amendment challenge to his sentence.

**III.**

¶18     States may criminalize the possession of child pornography to advance the compelling interest of protecting children from sexual exploitation.  As the Supreme Court has recognized:

> It is evident beyond the need for elaboration that a State's interest in "safeguarding the physical and psychological well-being of a minor" is "compelling." . . . The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.

10

*Osborne v. Ohio*, 495 U.S. 103, 109 (1990) (quoting *New York v. Ferber*, 458 U.S. 747, 756-58 (1982) (citations omitted)) (affirming Ohio's criminal ban on possession of child pornography). Child pornography not only harms children in its production, but also "causes the child victims continuing harm by haunting the children in years to come." *Id*. at 111 (citation omitted); *see also United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters.").

¶19     Criminalizing the possession of child pornography is tied directly to state efforts to deter its production and distribution. Given that the distribution and production of this material occurs "underground," the legislature must be permitted to "stamp out this vice at all levels in the distribution chain." *Osborne*, 495 U.S. at 110. Moreover, criminalization encourages the destruction of such materials. *Id*. at 111. The goal of combating the sexual abuse and exploitation inherent in child pornography animates Arizona's severe penalities for the possession of such material.[2]

---

[2] The importance of the state's interest justifies prohibiting the mere possession of child pornography, even though the

11

**¶20**     In 1978, the Arizona legislature determined that existing state laws were inadequate and enacted legislation specifically aimed at the child pornography industry.  The new law, the predecessor to A.R.S. sections 13-3551 to -3553, declared its purposes to include protecting children from sexual exploitation and to "prevent any person from benefiting financially or otherwise from the sexual exploitation of children."  1978 Ariz. Sess. Laws, ch. 200, § 2(B)(1), (3).  The legislature specifically identified a series of harms to child victims, including the use of the material by defendants in luring new victims and the fact that such materials cause continuing harm to the children depicted.  *Id*. § 2(A)(5)-(6).

**¶21**     In 1983, lawmakers extended this criminal ban to include possession itself, an amendment that prosecutors claimed would aid in prosecuting child molesters.  1983 Ariz. Sess. Laws, ch. 93; *Hearing on H.B. 2127 Before the H. Comm. on Judiciary*, 36th Legis., 1st Reg. Sess. 2 (Ariz. 1983) (comments of Elizabeth Peasley, Pima County Attorney's Office).  Such legislation also recognizes the fact that producers of child

---

Supreme Court held in *Stanley v. Georgia*, 394 U.S. 557, 565-66 (1969), that the First and Fourteenth Amendments prevent states from criminalizing the in-home possession of adult obscenity. The Court in *Osborne* noted that child pornography has "de minimis" First Amendment value and "the interests underlying child pornography prohibitions far exceed the interests justifying the Georgia law at issue in *Stanley*." 495 U.S. at 108.

pornography exist due to the demand for such materials. "The consumers of child pornography therefore victimize the children depicted . . . by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." *United States v. Norris*, 159 F.3d 926, 930 (5th Cir. 1998) (applying federal sentencing guidelines).

¶22 Correspondingly, the legislature soon thereafter included the possession of child pornography among crimes targeted in § 13-604.01 for enhanced sentencing as "dangerous crimes against children." 1985 Ariz. Sess. Laws, ch. 364, § 6. This legislation provides "lengthy periods of incarceration . . . intended to punish and deter" "those predators who pose a direct and continuing threat to the children of Arizona." *State v. Williams*, 175 Ariz. 98, 102, 854 P.2d 131, 135 (1993) (reviewing the legislative history of § 13-604.01).

¶23 Given this history, we conclude that the legislature had a "reasonable basis for believing" that mandatory and lengthy prison sentences for the possession of child pornography would "advance [] the goals of [Arizona's] criminal justice system in [a] substantial way." *Ewing*, 538 U.S. at 28 (internal citation omitted).

13

## IV.

¶24     It is "[a]gainst this backdrop," *id.*, 538 U.S. at 28, that we consider Berger's claim that his sentences are grossly disproportionate to his offenses.  Berger, as did Ewing, incorrectly frames the issue at the threshold.  Ewing argued that his three strikes sentence of twenty-five years to life was based on his "shoplifting three golf clubs"; the Supreme Court noted that in fact Ewing had been sentenced for felony grand theft of nearly $1200 after having already been convicted of at least two violent or serious felonies.  *Id.*

¶25     Berger contends that he has received a "200 year flat-time sentence . . . upon his conviction of possession of child pornography . . . ."  But Berger in fact was convicted of twenty separate counts of possession of child pornography involving minors under fifteen, and he was sentenced to a ten-year term for each count.  Each ten-year sentence must, by statute, be served consecutively.  A.R.S. § 13-604.01(K).

¶26     Berger has not argued that the State's charging him in twenty separate counts was improper.  Nor could he, as each count was based on a different video or photo image, the images involved some fifteen different child victims, and Berger had accumulated the images over a six-year period.  *Cf. Taylor*, 160 Ariz. at 420, 773 P.2d at 979 (declining to decide if individual could be prosecuted or sentenced on separate counts for multiple

14

images acquired simultaneously).  Nor does Berger dispute that possession of child pornography is a serious crime punishable as a felony under federal law and most state laws.  *Cf. Ewing*, 538 U.S. at 28 (noting theft of $1200 is a felony under federal and most state laws).  For purposes of our analysis, Berger committed twenty separate, and very serious, felonies.

**¶27**       In comparing the gravity of Berger's crime and the severity of the punishment, we focus on whether a ten-year sentence is disproportionate for a conviction of possessing child pornography involving children younger than fifteen.  "A defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts."  *State v. Jonas*, 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990). Accordingly, as a general rule, this court "will not consider the imposition of consecutive sentences in a proportionality inquiry . . . ."  *Davis*, 206 Ariz. at 387, ¶ 47, 79 P.3d at 74.[3]

**¶28**       "Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence."  *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988).  Thus, if the sentence for a particular offense is not

---

[3] The court in *Davis* concluded that a departure from the general rule was appropriate in light of the specific facts and circumstances of that case.  206 Ariz. at 387, ¶ 47, 79 P.3d at 74.  The general rule, rather than the exception recognized in *Davis*, applies here, for reasons explained *infra.*

15

disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate. *See Jonas*, 164 Ariz. at 249, 792 P.2d at 712. This proposition holds true even if a defendant faces a total sentence exceeding a normal life expectancy as a result of consecutive sentences. *See, e.g.*, *Lockyer*, 538 U.S. at 74 n.1 (rejecting, in context of federal habeas review, dissent's argument that two consecutive sentences of twenty-five years to life for separate offenses were equivalent, for purposes of Eighth Amendment analysis, to one sentence of life without parole for thirty-seven-year-old defendant); *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004); *Taylor*, 160 Ariz. at 422, 773 P.2d at 981.

¶**29**       Given the principles established by prior decisions, we cannot conclude that a ten-year sentence is grossly disproportionate to Berger's crime of knowingly possessing child pornography depicting children younger than fifteen. *Cf. Harmelin*, 501 U.S. at 1004 (Kennedy, J., concurring in part and concurring in the judgment) (noting severity of Harmelin's drug possession crime brought life sentence "within the constitutional boundaries established by our prior decisions").

¶**30**       The Supreme Court has affirmed a sentence of twenty-five years to life for the grand theft of three golf clubs worth nearly $1200 by a recidivist felon, *Ewing*, 538 U.S. at 30-32;

16

upheld a sentence of life in prison without parole for a first-time offender possessing 672 grams of cocaine, *Harmelin*, 501 U.S. at 996; and found no Eighth Amendment violation in two consecutive twenty-year prison terms for possession of nine ounces of marijuana with intent to distribute, *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (per curiam). Similarly, this court has upheld a sentence of twenty-five years without parole for a twenty-one-year-old defendant convicted of selling a $1 marijuana cigarette to a fourteen-year-old, even though this sentence was consecutive to a twenty-one-year sentence for the defendant's trafficking in stolen property with the same juvenile. *Jonas*, 164 Ariz. at 249, 702 P.2d at 712.

¶31        In fact, only once in the past quarter-century has the Supreme Court sustained an Eighth Amendment challenge to the length of a prison sentence. In that case, *Solem v. Helm*, a judge sentenced a non-violent repeat offender to life imprisonment without parole for the crime of writing a "no account" check for $100. 463 U.S. at 279-82. In concluding that this life sentence, "the most severe punishment that the State could have imposed," *id*. at 297, was grossly disproportionate, the Court noted that Solem's crime was quite minor, *Solem*, *id*. at 296. Indeed, the Court stated that the crime of uttering a no account check was "one of the most

17

passive felonies a person could commit." *Id.* (internal quotation omitted).

¶32    *Solem* also did not involve a mandatory sentence, but instead concerned a judge's discretionary decision to impose the maximum authorized sentence. Thus, *Solem* did not implicate the "traditional deference" that courts must afford to legislative policy choices when reviewing statutorily mandated sentences. *See Ewing*, 538 U.S. at 25 (O'Connor, J., announcing judgment of the Court); *Harmelin*, 501 U.S. at 1006-07 (Kennedy, J., concurring in part and concurring in the judgment); *Solem*, 463 U.S. at 299 n.26 (noting that Court's decision "d[id] not question the legislature's judgment").

¶33    Berger is in a fundamentally different situation than was the defendant in *Solem*. Berger received a statutorily mandated minimum sentence for each of his separate, serious offenses. The ten-year sentence imposed for each offense is consistent with the State's penological goal of deterring the production and possession of child pornography.

¶34    The evidence showed that Berger knowingly gathered, preserved, and collected multiple images of child pornography. When confronted by the police, he acknowledged that he had "downloaded some things that he was not proud of, and was not sure if he should have downloaded them or not." Additionally, in response to police questions, Berger admitted he had

18

downloaded images of people under eighteen and that he believed these people were involved in sexual conduct. He also possessed a news article describing a recent arrest of another person in Arizona for possession of child pornography.

¶35 The images for which Berger was convicted, graphically depicting sordid and perverse sexual conduct with pre-pubescent minors, were well within the statutory definition of contraband. Nor did Berger come into possession of these images fleetingly or inadvertently. Berger had obtained at least two images in 1996, some six years before his arrest. The websites Berger flagged as "favorites" included graphic titles indicating that they provide underage, and illegal, pornographic depictions. His computer contained "cookie" files and text fragments indicating he had searched for or visited websites providing contraband material. Berger also had recordable CDs indicating he had specifically set up a "kiddy porn" directory, which included other subfolders with titles indicating a collection of contraband images.

¶36 Taken together, this evidence indicates that, in the terminology of *Ewing*, Berger's sentences are "amply supported" by evidence indicating his "long, serious" pursuit of illegal depictions and are "justified by the State's public-safety interest" in deterring the production and possession of child pornography. *Ewing*, 538 U.S. at 29-30.

19

¶37     Berger nonetheless argues that our holding in *Davis* compels the vacating of his sentence.  In *Davis*, this court vacated four consecutive thirteen-year sentences imposed on a twenty-year-old man of below average intelligence convicted of having uncoerced sex at different times with two fourteen-year-old girls.  206 Ariz. at 380, ¶¶ 7-10, 79 P.3d at 68.

¶38     *Davis* represents an "extremely rare case" in which the court concluded prison sentences were grossly disproportionate. In so holding, the court observed that a sentence violates the Eighth Amendment if it is "so severe as to shock the conscience of society."  *Id*. at 388, ¶ 49, 79 P.3d at 75 (quotation omitted).  This language, however, must be understood as a restatement of the court's conclusion that the sentences were "grossly disproportionate" under the standard set forth in the plurality opinions in *Harmelin* and *Ewing*, which *Davis* expressly followed.  *Davis* was not suggesting a different standard by its use of the phrase "shock the conscience of society."[4]

---

[4] In *State v. Davis*, 108 Ariz. 335, 337, 312 P.2d 202, 204 (1972), this court rejected an Eighth Amendment challenge to a mandatory ten-year sentence for a recidivist offender, but noted that "in a proper case and at a proper time we may find that a particular penalty is so severe as to shock the conscience of society" and thus violate the Eighth Amendment.  Prior to *Ewing* and *Harmelin*, this court said that it would judge whether a sentence "shocks the conscience of the community" for Eighth Amendment purposes by whether it is "overly severe or disproportionate to the crime."  *State v. Bartlett*, 164 Ariz.

20

¶39     *Davis* acknowledged, and we here reaffirm, that a sentencing scheme that does not violate the Eighth Amendment in its general application may still, in its application to "the specific facts and circumstances" of a defendant's offense, result in an unconstitutionally disproportionate sentence. *Id.* at 384, ¶ 34, 79 P.3d at 71. Berger, however, misunderstands how the "specific facts and circumstances of the offenses" enter into the Eighth Amendment analysis under *Davis*.

¶40     The court in *Davis* effectively concluded that it could not reconcile the particular sentences imposed with any reasonable sentencing policy it could attribute to the legislature. Most significantly, the defendant in *Davis*, who had no prior criminal record, was caught up in the "broad sweep" of a statute that made no distinction between the perpetrators of incest, serial pedophiles, and an eighteen-year-old man engaging in sex initiated by a fifteen-year-old girlfriend. *Id.* at 384-85, ¶¶ 36-37, 79 P.3d at 71-72. The statute's breadth in terms of imposing liability was coupled with a sentencing scheme

---

229, 233, 792 P.2d 692, 696 (1990), *vacated*, 501 U.S. 1246 (1991). The Supreme Court itself has not used the "shocks the conscience" language in its Eighth Amendment review of prison sentences, although it has used such language with respect to the different issue of whether state action is so arbitrary as to violate substantive due process. *See Rochin v. California*, 342 U.S. 165, 172 (1952).

mandating lengthy consecutive sentences for each offense. *Id.* at 385, ¶ 37, 79 P.3d at 72.

¶41 In *Davis*, objective facts about the offenses indicated that the defendant's conduct was at the edge of the statute's broad sweep of criminal liability. Davis was twenty years old and his maturity and intelligence fell far below that of a normal adult. *Id.* at 384-85, ¶ 36, 79 P.3d at 71-72. The girls involved not only participated willingly, but they had sought Davis out and gone voluntarily to his home. *Id.* If the girls had been fifteen or older and Davis within two years of their age, he would not have been criminally liable at all. A.R.S. § 13-1407(F). But because his conduct was "swept up in the broad statutory terms," *Davis*, 206 Ariz. at 385, ¶ 37, 79 P.3d at 72, Davis was subject to four consecutive thirteen-year sentences.

¶42 Only after concluding that objective factors about Davis's offense showed he had been caught up in the expansive reach of the statute did the court determine that the consecutive nature of his sentences was relevant to the Eighth Amendment analysis. *Id.* at 387, ¶ 47, 79 P.3d at 74. In so doing, however, the court noted that its conclusion rested on the "specific facts and circumstances of Davis's offenses," and reaffirmed that the court "normally will not consider the imposition of consecutive sentences in a proportionality inquiry . . . ." *Id.* at 387-88, ¶¶ 47-48, 79 P.3d at 74-75.

22

¶43    Berger argues that, in light of *Davis*, the court must consider the consecutive nature of his sentences in the Eighth Amendment analysis, along with the "victimless" nature of his crime, and that this court must, at the least, order a re-sentencing hearing so he can present "mitigation evidence."

¶44    Berger's conduct is at the core, not the periphery, of the prohibitions of A.R.S. § 13-3553(A)(2) – the knowing possession of visual depictions of sexual conduct involving minors – and he, unlike *Davis*, cannot be characterized as someone merely "caught up" in a statute's broad sweep. Thus, there is no basis here to depart from the general rule that the consecutive nature of sentences does not enter into the proportionality analysis.[5]

---

[5] Berger has no prior criminal record, and *Davis* noted that the defendant there had no prior adult criminal record. 206 Ariz. at 385, ¶ 36, 79 P.3d at 72. This fact is not in itself a basis for challenging a mandatory prison sentence as grossly disproportionate. *See Harmelin*, 501 U.S. at 994-95 (rejecting defendant's contention that mandatory life sentence for first time offender was "cruel and unusual"). An offender's lack of prior convictions also does not alter the general rule that proportionality review focuses on the particular sentence for each offense rather than the cumulative sentences. For purposes of proportionality review, a prior criminal record may, however, increase the gravity of the offense that underlies a challenged prison sentence. *See Ewing*, 538 U.S. at 29 ("In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of criminal recidivism."). For example, this court may well have reached a different result in *Davis* if the defendant had prior adult criminal convictions.

23

¶45     Nor do we accept Berger's assertion that his crimes were "victimless" merely because he did not touch or even photograph any children himself.  The defendant in *Harmelin* similarly argued that his sentence to life without parole was unconstitutional because his possession of 672 grams of cocaine was a victimless and non-violent offense.  In rejecting this argument, Justice Kennedy noted the pernicious effects of the drug trade, including drug-related violence.  501 U.S. at 1002-03.  Here, the link between possession of the contraband images and the abuse of children is at least as direct.  Production of the images Berger possessed required the abuse of children, and Berger's consumption of such material cannot be disassociated from that abuse for purposes of the Eighth Amendment proportionality analysis.  *Cf. Norris*, 159 F.3d at 930 (noting, for purposes of federal sentencing guidelines, that "the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography").

¶46     Alternatively, Berger asks this court to remand his case for an evidentiary hearing in light of *Davis*.  He notes that, when he was sentenced, our court's Eighth Amendment case law did not allow a judge to consider the individual facts and circumstances of the crime committed, *see State v. DePiano*, 187

24

Ariz. 27, 29-30, 926 P.2d 494, 496-97, and *Davis* overruled that holding, 206 Ariz. at 384, ¶ 34, 79 P.3d at 71.

**¶47** *Davis*, however, does not interpret the Eighth Amendment to generally require evidentiary hearings to allow defendants to offer "mitigation evidence" to show that a particular sentence is disproportionate. The specific facts and circumstances considered relevant in *Davis* are those that go to the defendant's degree of culpability for the offense, not to a showing that the defendant is, apart from the crime at issue, a good person or a promising prospect for rehabilitation. *Cf. Davis*, 206 Ariz. at 384, ¶ 32, 79 P.3d at 71 (citing cases from other jurisdictions that consider defendant's culpability and harm caused by offense as part of proportionality analysis).

**¶48** In *Harmelin*, the Court held that the Eighth Amendment does not require courts to consider mitigation evidence before imposing mandatory prison sentences, even when a mandatory life term results. 501 U.S. at 996 (Scalia, J., announcing judgment of the Court); *id.* at 1006 (Kennedy, J., concurring in part and concurring in the judgment). Justice Kennedy noted that the Court's Eighth Amendment decisions "reject any requirement of individualized sentencing in noncapital cases," and that the Court had "never invalidated a penalty mandated by a legislature based only on the length of a sentence, and especially with a crime as severe as this one, [a court] should do so only in the

25

most extreme circumstance." *Id.* at 1006-07 (Kennedy, J., concurring in part and concurring in the judgment). *Davis* does not question these propositions.

¶49    Further, Berger has not identified any fact that he might offer on remand that would alter our conclusion that his sentences are not grossly disproportionate. At the time of his arrest, Berger was a fifty-two-year-old high school teacher, was married, and had no prior criminal record. These facts, which are in the record, do not reduce his culpability. The trial evidence showed that Berger knowingly sought and possessed numerous items of contraband child pornography over an extended period of time. Accordingly, considering "the specific facts and circumstances" of Berger's crimes only amplifies the conclusion that he consciously sought to do exactly that which the legislature sought to deter and punish. *See Seritt v. Alabama*, 731 F.2d 728, 737 (11th Cir. 1984) (rejecting habeas claimant's argument for an evidentiary hearing when circumstances of the crime were demonstrated in the record).

## VI.

¶50    Penalties as severe and unforgiving as those imposed here, as Justice Kennedy noted in *Harmelin*, present "a most difficult and troubling case for any judicial officer." 501 U.S. at 1008 (Kennedy, J., concurring in part and concurring in the judgment). But "the fixing of prison terms for specific

26

crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts." *Id.* at 998 (internal quotations omitted). Moreover, subject to constitutional limits, "[w]e recognize society's strong interest in protecting children and understand and appreciate that it is the legislature's province to assess the appropriate punishment for crimes against children." *Davis*, 206 Ariz. at 385, ¶ 37, 79 P.3d at 72.

¶51 In light of the legislature's intent to deter and punish those who participate in the child pornography industry, and Berger's commission of twenty separate offenses, we hold that the twenty consecutive ten-year sentences are not grossly disproportionate to his crimes. We vacate the part of the opinion of the court of appeals that addresses the Eighth Amendment issue, and we affirm the sentences.

_____
W. Scott Bales, Justice

CONCURRING:

_____
Ruth V. McGregor, Chief Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

27

**H U R W I T Z,** Justice, concurring

¶52      I fully concur in the analysis and result reached by the majority in this case.  I write briefly in response to Justice Berch's eloquent concurring and dissenting opinion.  As a policy matter, there is much to commend Justice Berch's suggestion that the cumulative sentence imposed upon Mr. Berger was unnecessarily harsh, and my personal inclination would be to reach such a conclusion.  As a judge, however, I cannot conclude under the Supreme Court precedent or even under the alternative test that Justice Berch proposes that Berger's sentences violate the United States Constitution.

**A.**

¶53      The issue in this case is whether the twenty consecutive sentences that Berger received for twenty separate crimes violate the cruel and unusual punishment clause of the Eighth Amendment.[6]  In my view, proof of an Eighth Amendment violation can only be premised on (a) a conclusion that a ten-year sentence for one count of sexual exploitation of a minor through knowing possession of child pornography itself is so disproportionate to the crime as to be cruel and unusual, or (b)

---

[6]    This case does not require us to confront the question of whether the Eighth Amendment can in some circumstances be violated by consecutive sentences for crimes essentially constituting one occurrence.  Thus, for example, we need not today decide whether similar sentences would be appropriate if Berger downloaded the images at one sitting, or possessed a book with twenty illegal photographs inside.

28

that even if a ten-year sentence for one count is constitutional, twenty such consecutive sentences are not.

¶**54**      As Justice Berch quite correctly suggests, and as the Supreme Court itself has admitted, the Court's "proportionality decisions have not been clear or consistent in all respects." *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).   I therefore find merit in Justice Berch's suggestion that objective analysis would be easier if courts were allowed to conduct an intra- and inter-jurisdictional analysis at the outset in order to find an inference of gross disproportionality.   However, as Justice Berch candidly admits, the Court has expressly eschewed this very approach.   *Id.* at 1005.

¶**55**      But even if we were free to follow Justice Berch's suggested approach, I would not conclude that an inference of gross disproportionality can be drawn here.   The initial question is whether a ten-year sentence for one count of this kind of sexual exploitation of a minor is itself unconstitutional.   That the Arizona penalty is purportedly the longest in the nation does not of course, establish disproportionality.   *See Rummel v. Estelle*, 445 U.S. 263, 281 (1980).   There will always be one state with the longest penalty, and if that were enough to establish an Eighth Amendment violation, the result would be a revolving door under

29

which the penalty for the next state in line would then be automatically unconstitutional. *See id.* at 282.

¶56     Nor can I conclude that inter-jurisdictional comparisons demonstrate that the penalty Berger received for a single count is disproportionate to the penalty that could be imposed elsewhere for a single such offense.    The federal sentencing guidelines in effect when Berger was sentenced recommended a sentence of fifty-seven to seventy-one months for possession of one (or more) proscribed depictions, but the governing statute allowed a sentence of up to fifteen years for one offense.[7]   As Justice Berch notes, at least nine other states allow (but do not require) a ten-year penalty, and four states permit a greater penalty.    Such is not the stuff of gross disproportionality.

¶57     Nor does an intra-jurisdictional comparison lead to a different result.     It is tempting to compare Berger's accumulated consecutive sentences to the maximum sentence for second degree murder or sexual assault.   But the question, of course, is not what a defendant who commits one murder or one

---

[7]    This range is based on an assumed violation of 18 U.S.C. § 2252(a)(2) (2000), an assumed offense conduct level of twenty-five, U.S. Sentencing Guidelines ("USSG") § 2G2.2 (2002), and a criminal history category for a first-time offender, USSG Ch. 5, pt. A, Sentencing Table.  The federal guidelines today recommend a sentence of seventy-eight to ninety-seven months for one such offense, USSG § 2G2.2 (West, Westlaw through 2006), but the governing statute allows a sentence of up to twenty years, 18 U.S.C. §§ 2252(b)(1) (West, Westlaw through 2006).

30

sexual assault faces as a potential sentence, but rather what one who commits twenty such offenses faces. It cannot be suggested that a 200-year sentence for twenty murders or twenty rapes would be disproportionate.

¶58 As Justice Berch suggests, her real concern is not that a defendant *can* receive a ten-year sentence for each offense, or that a court *can* impose consecutive sentences for multiple offenses, but rather that Arizona law *requires* that a court impose consecutive ten-year sentences for each offense. Yet, as Justice Berch correctly notes, the Supreme Court – whose Eighth Amendment interpretations bind us – has rejected the notion that mandatory flat sentences violate the Constitution because they do not allow consideration of the particular situation of the offender. *Harmelin*, 501 U.S. at 1006-07 (Kennedy, J., concurring). Nor does Supreme Court precedent allow us to find consecutive sentences for separate crimes unconstitutional if the individual sentences for each crime are not. *See Lockyer v. Andrade*, 538 U.S. 63, 74 n.1 (2003).

**B.**

¶59 I thus conclude that the majority opinion faithfully applies the Supreme Court's Eighth Amendment disproportionality jurisprudence. I do so reluctantly, however. What is troublesome here – as Justice Berch points out – is that the punishment for Berger's admittedly serious offenses intuitively

31

*seems* too long.  If I were a legislator, I would be free to find such a long sentence shocking to my conscience and vote for a less draconian sentencing scheme.  But the test for violation of the Constitution is not my personal conscience nor whether a sentence subjectively is bothersome to me.  The Supreme Court has held that a defendant may receive a life sentence for the commission of three felonies, none of which in and of themselves could result in a long term of imprisonment.  *Ewing v. California*, 538 U.S. 11, 30-31 (2003).  If this is the case, I cannot conclude that consecutive sentences for separate felonies turns an otherwise legal sentence into one that violates the Constitution.

¶60      Benjamin Cardozo long ago noted the correct role of the judge in difficult areas such as this:

> The judge, even when he is free, is still not wholly free.  He is not to innovate at pleasure.  He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness.  He is to draw his inspiration from consecrated principles.  He is not to yield to spasmodic sentiment, to vague and unregulated benevolence.  He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life."  Wide enough in all conscience is the field of discretion that remains.

B. Cardozo, *The Nature of the Judicial Process* 141 (1921).

¶61      This is the kind of case that tests the limits of Cardozo's wisdom and our discipline as judges.  But unless and until the Supreme Court changes its interpretation of the Eighth

32

Amendment, I am constrained to conclude that the legislature is empowered to require the sentences that Berger received.

_____
Andrew D. Hurwitz, Justice

**B E R C H,** Vice Chief Justice, concurring in part and dissenting in part

¶62       A mitigated sentence of 200 years for possession of twenty images of child pornography, without the possibility of pardon or early release, is extraordinarily long.  While courts must defer to the legislature in setting sentencing ranges, the Supreme Court has recognized a "narrow proportionality principle" inherent in the Eighth Amendment that prohibits sentences that are "grossly disproportionate" to the crime. *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring).[8]

¶63       The question is how to determine whether the sentence at issue is grossly disproportionate.  The Court has stated that reviewing courts must compare the "gravity of the offense" to the "harshness of the penalty." *Ewing v. California*, 538 U.S. 11, 28 (2003) (plurality opinion).  If this inquiry gives rise

---

[8]    Although substantial deference is due to legislative judgments regarding sentencing, the notion that the legislature may set any non-capital sentence without regard to proportionality has garnered only two votes. *See Harmelin*, 501 U.S. at 994 (Scalia, J., joined by Rehnquist, C.J.); *Ewing v. California*, 538 U.S. 11, 31 (2003) (Scalia, J., concurring), 32 (Thomas, J., concurring).

33

to an "inference" of gross disproportionality, the court must then examine the punishment for similar offenses in other jurisdictions (the inter-jurisdictional analysis) and the punishment for other offenses in the forum jurisdiction (the intra-jurisdictional analysis). *Solem v. Helm*, 463 U.S. 277, 291 (1983). The inquiry is not supposed to be subjective, yet courts are directed not to conduct an inter- and intra-jurisdictional analysis to assist in ascertaining whether a sentence is too long unless they first find an "inference of gross disproportionality," *see Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring), which the courts reviewing this case have not found. My point in this opinion is merely to demonstrate that were we able to conduct such an objective inquiry as a part of our determination of whether a sentence gives rise to an inference of gross disproportionality, the analysis would demonstrate that Arizona's sentence for this crime is by far the longest in the nation and is more severe than sentences imposed in Arizona for arguably more serious and violent crimes. Such objective facts support finding an inference of gross disproportionality.

¶64 For example, in the federal system, the sentencing guidelines recommend a sentence of approximately five years (57-71 months) based on the number and type of images Berger possessed. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §

34

2G2.2 (Supp. 2005) & § 5A (1996).[9]  While the Arizona Legislature is free to set its own sentencing ranges, of course, the federal sentences are set by a professional Sentencing Commission, whose opinions the federal courts have deemed entitled to "great weight" because of the Commission's expertise in matters of sentencing.  *United States v. Hill*, 48 F.3d 228, 231 (7th Cir. 1995); *see also Mistretta v. United States*, 488 U.S. 361, 379 (1989) (stating that Sentencing Commission is an "expert body"). In setting sentence ranges, this congressionally established Commission examines abundant data and consults experts in each field.  That this Commission recommends approximately five years as an appropriate sentence for possession of twenty images suggests that a minimum term of 200 years probably is not merely disproportionate, but grossly disproportionate to the crime.

---

[9]   This sentence is based on an offense level of 25, which both Justice Hurwitz and I agree is the appropriate level under the 2002 sentencing guidelines for one possessing multiple pornographic computer images of children under 12.  *See supra* ¶ 56 and n.7.  Two recent amendments have increased the offense level, resulting in a recommended sentence for twenty images of about nine years (97-121 months), or, if a defendant is charged with possessing more than 600 images, a range of eleven to fourteen years (135-168 months).   U.S.S.G. §§ 2G2.2 & 5A. Although the federal maximum statutory sentence is, as Justice Hurwitz correctly notes, fifteen years, Berger's conduct would not warrant a maximum sentence.  *See* 18 U.S.C. § 2252 (2000). Even if it did, fifteen years would be the total sentence for possession of all twenty images.  While the ranges and maximum sentence have been increased to twenty years, Berger's crimes would fall under the 2002 version of the statute.

¶65        Arizona's mandatory minimum 200-year sentence also exceeds that imposable in any other state.  *See Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring) (requiring examination of sentences imposed in other jurisdictions for similar crimes to validate an inference of gross disproportionality).  It is the unique combination of long mandatory minimum sentences, coupled with the requirements that each image be charged separately and that the terms be served consecutively and fully – that is, without possibility of early release – that renders Arizona's sentences extraordinarily long.  *See* A.R.S. §§ 13-3553, -604.01 (Supp. 2005).  Indeed, the *minimum* ten-year sentence in Arizona for possession of one image is greater than the *maximum* sentence for possession of child pornography in thirty-six states and equal to the maximum sentence in nine other states.[10] Additionally, most other states permit concurrent sentences or

---

[10]    These figures are based on possession of one image, and are based primarily on the copies of all fifty states' child pornography possession and sentencing statutes provided to the court by the parties in January and February, 2006.  The states that allow maximum sentences greater than ten years for one image – Georgia, Mississippi, Tennessee, and Utah – all have minimum sentences of less than ten years.  In those states, moreover, sentences may be served concurrently, they need not be served day-for-day, and probation is available.  Ga. Code Ann. §§ 16-12-100(b)(8), 42-8-34(a) (West, Westlaw through 2005 Spec. Sess.);  Miss. Code Ann. §§ 97-5-33(5), 97-5-35, 47-7-33(1) (West, Westlaw through 2005 5th Extraordinary Sess.); Tenn. Code Ann. §§ 39-17-1003, 40-35-111, 40-35-303(a) (West, Westlaw through 2005 Sess.); Utah Code Ann. §§ 76-5a-3(1), 76-3-203, 77-18-1 (West, Westlaw through 2005 2d Spec. Sess.).

grouping of charges. *E.g.*, *State v. Christensen*, 663 N.W.2d 691, 693 (S.D. 2003) (imposing two one-year sentences, to be served concurrently). Only Florida appears to require each image to be a separate count, but each charge there carries a five-year term and is probation eligible.[11] Fla. Stat. Ann. §§ 827.071(5), 775.082(3)(d) (term), 948.01 (probation) (West, Westlaw through 2005 'B' Sess.). In Arkansas, Berger would have been eligible for a sentence of three to ten years, and in Connecticut, possession of twenty images requires a sentence of one to ten years. Ark. Code Ann. §§ 5-27-304(b), 5-4-401(a) (West, Westlaw through 2005 Sess.); Conn. Gen. Stat. Ann. §§ 53a-196e, -35a (West, Westlaw through 2006 Supp.).

¶66     While some states provide for enhanced penalties for "second or subsequent" offenses, that term is defined as later offenses not charged at the same time. *See, e.g.*, *Miles v. State*, 51 So. 2d 214, 215 (Miss. 1951); *McGervey v. State*, 958 P.2d 1203, 1207 (Nev. 1998). By that definition, Berger is a first-time offender. In most states, Berger's sentence would not exceed five years, and he would also have the possibility of probation or early release. *See, e.g.*, Cal. Penal Code § 311.11(a) (West, Westlaw through 2006 Sess.) (up to twelve

---

[11]     Tennessee allows each image to be charged separately if there are fewer than fifty. Tenn. Code Ann. § 39-17-1003(b). In Utah, each minor depicted gives rise to a separate charge. Utah Code Ann. § 76-5a-3(3).

months); N.M. Stat. Ann. §§ 30-6A-3(A), 31-18-15(A)(9) (West, Westlaw through 2006 Sess.) (up to eighteen months). Thus, if the Supreme Court's jurisprudence permitted the court to examine the sentences imposed in other jurisdictions for similar crimes – the inter-jurisdictional analysis mentioned in *Solem*, *Harmelin*, and *Ewing* – the analysis would support the inference that Berger's 200-year sentence is grossly disproportionate.

¶67    Moreover, the sentence at issue is longer than that imposed in Arizona for many crimes involving serious violence and physical injury to the victim. Second degree murder, for example, like possession of child pornography, also carries a minimum sentence of ten years, *see* A.R.S. § 13-710(A) (2001), but a term imposed for a murder may be served concurrently with sentences imposed for other crimes. Similarly, the *minimum* sentence for possession of an image of child pornography is longer than the *presumptive* sentence for rape or aggravated assault. *See* A.R.S. §§ 13-1406(B) (2001) (seven years for rape), 13-1204(B), -701(C)(2) (2001) (3.5 years for aggravated assault). A presumptive sentence for possession of two images of child pornography (thirty-four years) is harsher than the sentences for second degree murder or sexual assault of a child under twelve (twenty years). *See* A.R.S. § 13-604.01(B), (D) (Supp. 2005). Even a mitigated sentence for possession of five images (fifty years) amounts as a practical matter to a life

sentence without parole, more serious than the sentence imposed for virtually any crime in the state. For molesting a child, one might receive the same sentence that Berger has received for possessing one picture.[12] *See* A.R.S. § 13-604.01(D). Indeed, sexual exploitation of a minor, the offense with which Berger was charged, is the only "dangerous crime against children" that by definition does not involve contact with any children. Yet a defendant may easily accrue a very lengthy sentence. The Supreme Court has said that "[i]f more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Solem*, 463 U.S. at 291. This factor as well indicates the extraordinary nature of the sentence in this case. *See id.* at 299.[13]

**¶68** The majority correctly observes, however, that Berger was convicted of not one, but twenty serious felonies. Op. ¶

---

[12] These facts might lead victims of violent crime to think that the legislature and justice system care less about their injuries and losses than it does about punishing those who possess pornographic images. *See United States v. Angelos*, 345 F. Supp. 2d 1227, 1251 (D. Utah 2004) ("[C]rime victims expect that the penalties the court imposes will fairly reflect the harms that they have suffered."), *aff'd by* 433 F.3d 738 (10th Cir. 2006).

[13] Terrorist co-conspirator Zacarias Moussaoui was recently sentenced to two life sentences in prison – the equivalent of the sentence Berger received – for Moussaoui's involvement in the terrorist acts that led to the deaths of nearly 3000 people on September 11, 2001. *United States v. Moussaoui*, Crim. No. 01-455-A (E.D. Va. May 4, 2006).

25. Moreover, my colleagues note, we must look at the sentences for the individual crimes, Op. ¶ 27, and defer to the legislature's requirement of mandatory sentences. Op. ¶ 32. From this, my colleagues derive the proposition that the court may not consider the consecutive nature of Berger's sentences in determining whether the total is grossly disproportionate to the seriousness of Berger's crimes, Op. ¶ 27, nor may we consider the mandatory flat nature of the sentences.

¶69 I agree that the Supreme Court has implied as much when dealing with statutes different from those now before us. *Lockyer v. Andrade*, 538 U.S. 63, 74 n.1 (2003) (consecutive sentences); *Harmelin*, 501 U.S. at 1006-07 (Kennedy, J., concurring) (mandatory sentences). But in determining whether a total sentence is grossly disproportionate to the crime for which it was meted out as punishment, we must deal with the sentence imposed as a whole and not shield ourselves from the full impact of the sentence by analyzing only one charge and sentence. Arizona's sentencing scheme requires very long, mandatory sentences that must be served consecutively and fully, with no possibility of probation, pardon, or early release. These combined features affect the real-world sentences defendants must serve, and we should not allow these unique features and the resulting sentences to escape review by focusing only on the sentence for one charge. We suggested as

40

much in *State v. Davis*, 206 Ariz. 377, 387-88, ¶ 47, 79 P.3d 64, 74-75 (2003).

**¶70**    Arizona's sentencing scheme is unique in coupling extraordinarily long terms with mandatory stacking requirements, and in requiring that each sentence be fully served, without possibility of early release.  The compounding impact of this triple whammy should not escape scrutiny.  While great deference is owed to the legislature's choice to impose stringent sentences, the constitution imposes on this court the obligation to determine whether the resulting sentence is cruel and unusual in light of the circumstances of an individual case.

**¶71**    The Supreme Court requires the court to measure the gravity of the crimes for which Berger was convicted – possession of twenty graphic images of child pornography – against the severity of the sentence imposed.  *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring).  In weighing the gravity of the offenses, the court may consider the defendant's criminal history, *see Ewing*, 538 U.S. at 29 (plurality opinion), as well as the "harm caused or threatened to the victim or society, and the culpability of the offender."  *Solem*, 463 U.S. at 292.

**¶72**    Berger has no prior criminal record.  He was convicted of possessing twenty grossly obscene images depicting young children engaged in lewd acts.  He was not involved in making any of the photographs and the record contains no evidence that

41

he purchased the items or intended to sell them. They appear to be images he downloaded from the Internet. Although purchase of such items undoubtedly drives the market for their production, it is unclear that mere possession does so.

¶73     While the legislature may choose to punish severely those who support the child pornography industry because of pornography's extremely deleterious effect on those degraded and harmed in its making, due process notions of individualized and appropriate sentencing require consideration of the fact that Berger engaged in no force or violence, made no threats of force or violence, and did not physically injure anyone. *See Burns v. United States*, 287 U.S. 216, 220 (1932) (setting forth due process requirement of individualized sentencing). Indeed, there is no evidence that Berger has ever touched any child improperly. That absence of direct violence affects the assessment of society's interest in punishing his acts so severely. *See Rummel v. Estelle*, 445 U.S. 263, 275 (1980).

¶74     Although the Supreme Court has confirmed that a limited proportionality principle inheres in the Eighth Amendment to prevent sentences that are "grossly disproportionate" to the crime committed, *Ewing*, 538 U.S. at 23 (plurality opinion), that Court has only twice struck a sentence as being so grossly disproportionate to the crime as to violate the Eighth Amendment. *See Solem*, 463 U.S. at 303; *Weems v.*

42

*United States*, 217 U.S. 349, 382 (1910). In *Solem*, the Court held that imposing a life sentence for passing an "insufficient funds" check violated the Eighth Amendment's requirement that sentences not be grossly disproportionate to the crime committed. 463 U.S. at 303. In the case before us, Berger was sentenced to 200 years – more than two and one-half lifetimes, from birth to death – for possessing twenty lewd and obscene photographs.

¶75 While one can rationalize that the defendant here was convicted of twenty felonies rather than one, other considerations mitigate the importance of that factor. Unlike other crimes, which tend to occur in relative isolation, those who possess pornography tend to possess more than one image. Because possession of each image constitutes a separate crime and the minimum sentence for each crime is ten years, the sentences quickly mount up. Moreover, in this case, Berger had no chance to rehabilitate between convictions because he was convicted on all twenty counts on one occasion.

¶76 I do not condone Berger's crimes. Child pornography is a serious offense. *See* 1978 Ariz. Sess. Laws, ch. 200, § 2; *see also State v. Taylor*, 160 Ariz. 415, 422, 773 P.2d 974, 981 (1989). I concur in the majority's analysis of the crime itself and of the legislature's right to impose severe penalties for it. *See* Op. ¶¶ 18-23. I further agree that Berger's crimes,

43

unlike the crimes at issue in *Davis*, were precisely the type of criminal acts the legislature intended to punish. 206 Ariz. at 385, ¶ 37, 79 P.3d at 72. Berger was not "swept up" in an overly broad categorization, as was the defendant in *Davis*. *Id.*

¶77 Nonetheless, sentences must not only reflect the seriousness of the offense and deter the defendant and others from committing future crimes, they should also promote respect for law. We are not asked to determine in this case whether a sentence of ten years would ever be appropriate for possession of a pornographic image. It might be. We are asked instead to determine whether in this case, 200 years is just punishment for a defendant who possessed child pornography, but directly harmed no one. An objective examination of the 200-year sentence reveals that it far exceeds the sentence imposed for similar crimes in any jurisdiction and exceeds the penalties regularly imposed in Arizona for crimes that result in serious bodily injury or even death to victims. The sentence provides no opportunity for rehabilitation and provides no second chance. Instead, it imposes on the taxpayers the burden of supporting the defendant for the rest of his life. Such a sentence seems incompatible with "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958).

¶78 The foregoing analysis would support an inference of

44

gross disproportionality, if the court had drawn such an inference. But it didn't. Given that result, it is difficult to envision when the court would ever find a term of years to be disproportionate to the gravity of the crime and the harm to the public.[14]

**¶79**     In conclusion, I concur in the court's statements of the rules emanating from the *Harmelin* line of Supreme Court cases and its interpretation of *Davis*. I also agree that exploitation of children is a serious crime and that the legislature has responsibility for defining crimes and setting the sentencing ranges for those crimes. I disagree only in that I would find that a minimum mandatory sentence of 200 years for possession of twenty pornographic images raises an inference of gross disproportionality that requires additional analysis before ultimately the court determines whether the sentence is unconstitutionally disproportionate.

_____
Rebecca White Berch, Vice Chief Justice

---

[14]     The governor generally has the power to grant pardons or commute sentences. A.R.S. § 31-443 (2002). In this case, however, the statute setting forth the sentence purports to preclude that remedy. A.R.S. § 13-604.01(G) (providing that defendant is not subject to pardon or early release). Moreover, it would be a brave politician who ventured to reduce the sentence of a sex offender. For those reasons, among others, courts have a role, although a limited one, in determining the constitutionality of sentences of terms of years.

45